No. 24,503.

Louisa Goodyear, as Administratrix of the Estate of Lewis Goodyear, Deceased, *Appellant,* v. James C. Davis, Director General of Railroads, *Appellee.*

SYLLABUS BY THE COURT.

1. Federal Employers' Liability Act—*Two Distinct and Separate Rights of Action Created—One in the Injured Employee—One in His Personal Representative.* The Federal Employers' Liability Act (35 U. S. Stat., ch. 149, as amended by 36 U. S. Stat., ch. 143) creates a right of action in the injured employee for his suffering and loss resulting from the injury and also creates a distinct and independent right of action in the personal representative of the deceased employee in the event death results from the injury, for the benefit of certain designated dependents.

2. SAME—*Settlement by Injured Employee—No Bar to Action by His Personal Representative.* A settlement made by the injured employee atfer the injury and prior to his death, for his suffering and loss, is not a bar to the action by the personal representative for the benefit of dependents for the death, if it resulted from the injury.

3. SAME—*Settlement by Injured Employee in Presence of Wife—Wife Not Estopped from Seeking to Set Aside Settlement.* In an action under the Federal Employers' Liability Act by the personal representative for damages to the injured employee and for the death, the widow of the employee having been appointed administratrix, the fact that as the wife of the injured employee she was present at the time an agent of defendant made a settlement with him for his injuries would not estop her, as personal representative of his estate, from seeking to set aside the release because of his mental incapacity to execute it.

Appeal from Republic district court; JOHN C. HOGIN, judge. Opinion filed November 10, 1923. Reversed.

*N. J. Ward,* and *John F. McClure,* both of Belleville, for the appellant.

*Luther Burns, J. E. DuMars,* both of Topeka, and *W. D. Vance,* of Belleville, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action by an administratrix for damages under the Federal Employers' Liability Act for (*a*) the wrongful death of Lewis Goodyear, and (*b*) for the personal injuries sustained by him. The answer, among other things, plead a settlement made with Goodyear after the injury, and a release executed by him of all damages resulting to him therefrom. The reply sought to avoid the release (*a*) for fraud, (*b*) because of mental incapacity of Goodyear to execute it, and (*c*) for mutual mistake. There was a trial to a jury which made special findings of fact and returned a general verdict for defendant, and plaintiff has appealed.

For many years Lewis Goodyear was employed by the Chicago, Rock Island & Pacific Railway Company as car inspector at Belleville, a division point, and continued his employment under the director general when the railroads passed under federal control. It was his duty to inspect trains, while they were at the station, for hot boxes, loose or damaged connections, etc. He worked seven days a week, earned about $160 per month, was sixty-four years old, and enjoyed fairly good health. On July 31, 1919, a truck had been left, by some other employee of the defendant, so near the track that it was struck by an incoming train and thrown against

Goodyear, who was attending to his duties. In the accident he sustained two fractured ribs and serious bruises about the head, body and knee. He was taken home and treated by a physician employed by defendant, who had also been the physician for the Goodyear family. The fractured ribs healed in three or four weeks, and he was apparently recovered from the injury, except his knee, which continued to trouble him for several months. With the aid of a cane he went to the doctor's office and about town, but there was some stiffness in the knee and he thought it unsafe to undertake his regular work. The physician continued to treat the knee, by electric applications, and otherwise, and finally, near the close of the year, had him wear an especially prepared elastic stocking, and the knee seemed to get all right. Goodyear thought he could go to work and set March 1, 1920, as the date, but did not do so. On March 12, Goodyear met defendant's claim agent, a Mr. Stiers, about the depot and told him he planned to go to work and wanted to settle with defendant. After a little talk a settlement was agreed upon, by which defendant was to pay him $1,135 and pay his doctor bills. Mr. Stiers stated that he would have to get authority to issue the draft in payment; that he would do so and return to Belleville and make payment in a few days. He did return March 16, went to Goodyear's home, delivered the draft to him, and Goodyear executed a full and complete release and satisfaction of all damages resulting to him from the accident and injuries of July 31, 1919. On May 4, 1920, Mr. Goodyear died. Thereafter his widow was appointed administratrix of his estate and brought this action. It was one of the claims of the defendant that his death was not the result of the injuries received in the accident of July 31 but resulted from other causes. Much evidence was presented on this branch of the case, and it is possible the jury found for the defendant on that theory. But whether that be true is immaterial on this appeal, for, under the record as here presented, this appeal must be determined upon the instructions pertaining to the release. In answer to a special question the jury found that no fraud was practiced by any agent or employee of the defendant in obtaining the release, and no complaint is made of the instructions of the court on that question.

Appellant complains of the 12th instruction, which reads:

"One of the grounds alleged in plaintiff's petition for setting aside the release is that Lewis Goodyear was not in possession of his mental faculties at

the time of the execution of the release, and that thereby he was rendered incompetent in law to transact business. You are instructed that if the plaintiff herein, wife of the deceased Lewis Goodyear, was present at the time of the settlement and knew of his mental condition and made no protest to the agent of defendant against such settlement and did not inform the agent of said Goodyear's mental condition, then she as plaintiff in this action will not be permitted to complain of the settlement having been made, but will be considered as having acquiesced in and agreed to the said settlement by her silence. But on the contrary if you find from the evidence that she was not present at the time of the settlement or that she did not know of Lewis Goodyear's alleged mental condition, or that she did protest to the agent against such settlement, then she would not be estopped from setting up such defense to said release."

We think this is an erroneous statement of the law, first, because the silence of the wife could not estop dependent children for whose benefit, in part, the action was brought, and second, the action is maintained, not by the widow, but by the personal representative of the deceased. This might be some one other than the widow, even a corporation, as it was in *Chicago, R. I. & P. Ry. Co. v. Fontron Loan & Trust Co.*, 214 Pac. 172 (Okla.).

The appellee argues that any error in instruction No. 12 was cured by instruction No. 13, which reads as follows:

"If you find from the evidence and by evidence which is clear, decided and satisfactory, that at the time Lewis Goodyear executed the release in question here he was not mentally capable of executing the same then you would be justified in holding said release null and void."

But it is difficult to see how it could have that effect. Reading the two instructions together, plaintiff would be estopped from maintaining the action if the conditions existed as set out in instruction No. 12 and if the jury should find they did not exist then under instruction No. 13 they would be required to find mental incapacity by evidence which is clear, decided and satisfactory. There is no claim here that Louisa Goodyear was paid anything at the time of that settlement for damages resulting in the death of her husband and her presence at that time would not estop a personal representative of deceased from maintaining an action for the benefit of dependents.

Appellant complains of instruction No. 19, which reads:

"You are instructed that the law favors a compromise and settlement of disputes, and when parties in good faith enter into an agreement based on good consideration, neither is afterwards permitted to deny it."

When we consider the dual nature of the relief sought; the triple nature of the attack made upon the release, together with questions

which necessarily arise in an action of this character, it is apparent the court could not state everything in one instruction. It was proper for the court to inform the jury of the general principles of law applicable to the case and their specific application to the case on trial. This instruction is a statement of a general principle of law which has been frequently announced by this and other courts. (*Lewis v. Kimball,* 103 Kan. 173, 173 Pac. 279; *Roy v. Kirn,* 208 Mich. 571; *Kilby v. Charles City W. R. Co.,* 191 Iowa, 926.) It requires that the settlement be made in good faith, which means without fraud, duress, concealment, and assumes a lack of mental incapacity or mutual mistake, and upon good consideration. The court gave other instructions on fraud, mental capacity, mutual mistake, and specifically told the jury that the instructions must be considered as a whole. While it might have been stated with more specific detail of wording, we do not regard it as possible that the jury was misled by it.

Appellant complains of the 6th instruction, which reads as follows:

"You are instructed that said release is a complete bar to the claims of the plaintiff, unless you find that it was executed by Lewis Goodyear by reason of fraud and misrepresentation on the part of the defendant or because Lewis Goodyear was mentally incapable of executing said release at the time he signed same, or because of mutual mistake on the part of the defendant and of said Lewis Goodyear which caused said Goodyear to sign said release. If you find from the evidence that said release should not be set aside for any of the reasons set up by the plaintiff, then you should find for the defendant and need not consider any further matters in the case."

Appellant contends that at most the release could be a bar to that portion only of the action which seeks to recover damages sustained by Lewis Goodyear personally, and could not be a bar to damages recoverable under the federal employers' liability act by the personal representative of the deceased for the benefit of dependents for his death. So far as counsel have advised us, or as our investigation discloses, this question has never been passed upon by any federal or state court, construing the federal employers' liability act. In order to understand the question presented, perhaps we should look into the history and purposes of the statute in question.

At common law a person injured by the wrongful act of another could maintain an action for the damages which he sustained resulting from the injury, but this cause of action abated at his death. It

could not be brought by, nor revived and prosecuted by, his personal representative, nor by his dependents. By statute passed in most of the states in this country this cause of action survives the death of the injured person and may be revived and prosecuted in the name of his personal representative.

At common law no cause of action existed for wrongful death, and no action for damages for wrongful death could be maintained by the personal representative of the deceased, nor by his dependents.

In 1846 there was enacted in England what is commonly known as Lord Campbell's act, S. 9 and 10 Vict., ch. 93 (Appendix A), which provides, in effect, that an action may be maintained whenever death is caused by a wrongful act, neglect, or default of another which would have entitled the person injured to maintain an action if death had not ensued; that the action should be brought in the name of the executor or administrator of the injured deceased for the benefit of designated persons, members of deceased's family or next of kin, and the damages recoverable in such action are the pecuniary damages suffered by such beneficiaries by reason of the death. This was held to create a new cause of action, one which arose only when death resulted from the injuries, and to permit the recovery of damages, different in their nature from those which could be recovered in an action brought by the injured person, viz.: the pecuniary damages sustained by the dependents by reason of the death of the injured.

Statutes similar to Lord Campbell's act have been enacted by many of the states in this country. In 1908 congress, by virtue of the authority given it by the constitution over interstate commerce (*Kelly's Adm'x v. Chesapeake & O. Ry. Co.,* 201 Fed. 602), passed what is commonly known as the federal employers' liability act (35 U. S. Stat. ch. 149 [Appendix B]), which provides, in substance, that every common carrier engaged in interstate commerce shall be liable in damages to (a) any person suffering injury while he is employed by such carrier in such commerce, or, (b) in case of death of such employee, to his or her personal representative, for the benefit of certain designated relatives or next of kin dependent upon him, for such injury or death resulting in whole or in part from the negligence of the carrier. This was the first effective congressional legislation on the subject (the prior act of June 11, 1906, was held invalid in *Howard v. Ill. C. R. Co.,* 207 U. S. 463), and by it congress took possession of the field of the liability of carriers by rail to

Goodyear, *Administratrix,* v. Railway Co.

their employees while engaged in interestate commerce. In this field it supersedes state legislation upon the subject. It is held to be both inclusive and exclusive; that is, it includes all circumstances under which common carriers are liable because of injuries to their employees while engaged in interstate commerce, and excludes their liability to their employees so engaged under any other circumstances, such as injury not caused by negligence, and under any other statute, such as a state workmen's compensation act. (Second Employers' Liability Cases, 223 U. S. 1; *Chicago, Rock Island Ry. v. Wright,* 239 U. S. 548; *Erie R. R. Co. v. Winfield,* 244 U. S. 170; *New York Cent. & C. R. R. Co. v. Tonsellito,* 244 U. S. 360; *New York Cent. R. R. Co. v. Porter,* 249 U. S. 168.) It provides for an action by the injured employee, which he had at common law, and for an action for death by the personal representative, similar to the Lord Campbell act. (*Mich. Cent. R. R. v. Vreeland,* 227 U. S. 59; *St. Louis & Iron Mtn. Ry. v. Craft,* 237 U. S. 648.) As originally passed it did not provide for the survival of the cause of action of the injured employee (*Fulgham v. Midland Valley R. Co.,* 167 Fed. 660; *Walsh v. New York, N. H. & H. R. Co.,* 173 Fed. 494), but this was provided for by an amending statute passed by congress in 1910 (36 U. S. Stat. ch. 143), and made section 9 of the original act, which provides:

"Any right of action given by this Act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury."

It was admitted by the pleadings and statements of counsel in this case—

"That the plaintiff is authorized to bring this action as administratrix; that the defendant is the director general of railroads and the proper party to whom this case should be brought against; that Lewis Goodyear was an employee of the defendant at the time of the accident and was rightfully upon the property of the defendant in, performance of his duties and was injured in the performance of such duties and that such injury occurred while decedent was employed in interstate commerce."

So under the Federal Employers' Liability Act as applied to this case, Lewis Goodyear had a cause of action against defendant for the personal injuries he sustained, which (omitting for the present any settlement made by him in his lifetime) survived his

death, whether his death resulted from the injury or from other causes and which could be prosecuted by his administratrix. Under this cause of action the measure of damages would be his suffering and such pecuniary loss as he personally sustained by reason of the injury. At his death (assuming that his death resulted from the injury) a cause of action then accrued in behalf of his personal representative for the benefit of his widow and children for the damages such dependents sustained by reason of his death. On this cause of action the measure of damages is the pecuniary loss to such dependents occasioned by his death. This has been made clear by the decisions of the supreme court of the United States interpreting this act. *Mich. Cent. R. R. v. Vreeland,* 227 U. S. 59, was an action brought by the personal representative of an employee after his death, not for the injuries suffered by his intestate, but for the loss suffered by his widow as a consequence of his wrongful death. Speaking of the act the court said:

"We think the act declares two distinct and independent liabilities, resting, of course, upon the common foundation of a wrongful injury, but based upon altogether different principles. It plainly declares the liability of the carrier to its injured servant. If he had survived he might have recovered such damages as would have compensated him for his expense, loss of time, suffering and diminished earning power. . .

"The obvious purpose of Congress was to save a right of action to certain relatives dependent upon an employee wrongfully injured, for the loss and damage resulting to them financially by reason of the wrongful death. . . This cause of action is independent of any cause of action which the decedent had, and includes no damages which he might have recovered for his injury if he had survived. It is one beyond that which the decedent had,—one proceeding upon altogether different principles. It is a liability for the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them and for that only." (pp. 65, 68.)

In *St. Louis & Iron Mtn. Ry. v. Craft,* 237 U. S. 648, the action was brought after the death of the injured employee by an administrator to recover for injuries to and the death of his intestate.

"The action was for the benefit of the father, there being no surviving widow, child or mother, and the damages sought were for (a) pecuniary loss to the father by reason of the death and (b) conscious pain and suffering of the decedent before the injuries proved fatal. In the trial court the plaintiff had a verdict and judgment awarding $1,000 for the pecuniary loss to the father and $11,000 for the pain and suffering of the decedent, and the Supreme Court of the state, after reducing the latter sum to $5,000, affirmed the judgment." (p. 653.)

After discussing the original act with the amendment made in 1910, the court said:

"No change [by the amendment] was made in § 1 [of the act of 1908]. It continues, as before, to provide for two distinct rights of action; one in the injured person for his personal loss and suffering where the injuries are not immediately fatal, and the other in his personal representative for the pecuniary loss sustained by designated relatives where the injuries immediately or ultimately result in death. Without abrogating or curtailing either right, the new section provides in exact words that the right given to the injured person 'shall survive' to his personal representative 'for the benefit of' the same relatives in whose behalf the other right is given. Brought into the act by way of amendment, this provision expresses the deliberate will of Congress. Its terms are direct, evidently carefully chosen, and should be given effect accordingly. It does not mean that the injured person's right shall survive to his personal representative and yet be unenforceable by the latter, or that the survival shall be for the benefit of the designated relatives and yet be of no avail to them. On the contrary, it means that the right existing in the injured person at his death—a right covering his loss and suffering while he lived but taking no account of his premature death or of what he would have earned or accomplished in the natural span of life—shall survive to his personal representative to the end that it may be enforced and the proceeds paid to the relatives indicated. And when this provision and § 1 are read together the conclusion is unavoidable that the personal representative is to recover on behalf of the designated beneficiaries, not only such damages as will compensate them for their own pecuniary loss, but also such damages as will be reasonably compensatory for the loss and suffering of the injured person while he lived. Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong but a single recovery for a double wrong." (p. 657.)

In *Great North'n Ry. Co. v. Capital Trust Co.*, 242 U. S. 144, after discussing the provisions of the act as creating a liability to the injured employee and also to his personal representative, it was said:

"Damages recoverable under the former claim are limited to such as will reasonably compensate for the loss and suffering of the injured person while he lived." (Syl.)

And at page 147, quotes with approval from the Craft case, 237 U. S. 648, 658, as follows:

" 'Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is

confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong but is a single recovery for a double wrong.' "

Recovery both for the loss and suffering sustained by the injured employee and for the damage to dependents resulting from the death have been allowed in *Kilburn v. C. Milwaukee & St. P. Ry. Co.*, 289 Mo. 75, *Chicago, R. I. & P. Ry. Co. v. Fontron Loan & Trust Co.*, 214 Pac. 172 (Okla.); *Thornhill v. Davis*, 113 S. E. 370 (S. C.), and in other cases, where the action was brought by the personal representative of the injured employee. But the question of the effect of a settlement by the injured employee for his injuries, nor the kindred question of the effect of an action brought by him, which went to judgment in his favor and the judgment paid, upon the right of the personal representative to maintain an action for his death, was not involved in any of those cases. The latter question was specifically reserved by the supreme court in the Craft case, 237 U. S. 648, 659.

In *Seaboard Airline Ry. Co. v. Oliver*, 261 Fed. 1, decided by the U. S. Circuit Court of Appeals of the Fifth Circuit, it was held:

"Under Employers' Liability Act April 22, 1908, § 1 (Comp. St. § 8657), making railroad carrier liable to an injured employe, or in case of death to his personal representatives, and section 9, as amended by Act April 5, 1910, § 2 (Comp. St. § 8665), providing that rights of action given to a person suffering injuries shall survive, and that in such case there shall be only one recovery for the same injury, the personal representative of an injured employe, who recovered judgment for his injuries, cannot recover for his death." (Syl.)

This decision appears to be reached by reason of the wording of section 1. It is said in the opinion:

"The first section of the act makes the carrier liable in damages to the injured employe, 'or, in case of the death of such employe, to his or her personal representative, . . .'. The two distinct rights of action are given in the alternative or disjunctively. The language used indicates the absence of an intention to allow recoveries for the same wrong by both the injured employee and in case of his death, by his personal representative. Only one recovery being allowed when the injured employee dies without having enforced the right of action given to him." (p. 2.)

It will be noted that this reasoning is contrary to that of the supreme court, announced in the cases above cited, where it is repeatedly said, "the two claims are quite distinct, no part of either being embraced in the other" and recovery is permitted on both.

In view of the fact that statutes somewhat similar to the Federal Employers' Liability Act have been passed in many of the states,

that is, authorizing an action on behalf of an injured person for wrongful injuries and providing for the survival of that action in the event of his death, and also providing for an action for death for wrongful injury by the personal representative for the benefit of certain designated relatives or next of kin, it would seem that some light could be thrown upon the matter by the decisions of the court upon the respective state statutes. An examination of them, however, discloses that they are not as convincing as they might be for the reason that there is quite a little variation in the state statutes upon the subject, and a still greater variation in the interpretation which the courts have placed upon the statutes of their respective states.

In this state we have a statute providing an action for death by wrongful act by the personal representative (Gen. Stat. 1915, § 7323). We also have a statute which provides for the survival of causes of action (Gen. Stat. 1915, § 7322). Under these statutes it was held, in *McCarthy, Adm'r, v. Railroad Co.,* 18 Kan. 46, that under our survival statute the only causes of action to survive for injury to the person is when the death does not result from the injury, but occurs from some other circumstance; that if the death was the result of the injury the action should be solely under section 7323. Judge Brewer was a member of this court at that time and concurred in the decision and afterwards, while judge of the federal court of this state, in the case which arose before him involving the statute, *Hulbert v. City of Topeka,* 34 Fed. 510, he questioned the correctness of the decision. However, the conclusion reached in that case has been uniformly adhered to by this court. *City of Eureka v. Merrifield,* 53 Kan. 794, 37 Pac. 113; *Martin v. Railway Co.,* 58 Kan. 475, 49 Pac. 605; *Railway Co. v. Bennett,* 58 Kan. 499, 49 Pac. 606, disapproving contrary position taken in the same case by the Court of Appeals, 5 Kan. App. 231; *Sewell v. Railway Co.,* 78 Kan. 1, 96 Pac. 1007; *Berner v. Mercantile Co.,* 93 Kan. 769, 145 Pac. 567. The same conclusion was reached in *Holton v. Daly, Admx.,* 106 Ill. 131, and *Lubrano v. Atlantic Mills,* 19 R. I. 129. Under this construction the question of the effect of a settlement by the injured person upon an action brought by his personal representative could not arise.

Interpreting the Lord Campbell Act, in *Read v. G. E. Railway Co.,* 3 C. Q. B. 555, where the injured person had settled in his lifetime, accepting a sum of money in full satisfaction and discharge of

all the claims and causes of action he had against defendant, it was held: "that the cause of action was the defendants' negligence, which had been satisfied in the deceased's lifetime, and that the death . . . did not create a fresh cause of action," and hence that the action for wrongful death could not be maintained. In the opinion it was said:

"The question turns upon the construction of s. 1 of 9 & 10 Vict. c. 93. Before that statute the person who received a personal injury, and survived its consequences, could bring an action, and recover damages for the injury; but if he died from its effects, then no action could be brought. To meet this state of the law the 9 & 10 Vict., c. 93, was passed, and 'whenever the death of a person is caused by a wrongful act, and the act is such as would, if death had not ensued, have entitled the party injured to maintain an action, and recover damages in respect thereof, then, and in every such case, the person who would have been liable if death had not ensued shall be liable for an action for damages notwithstanding the death of the party injured.' Here, taking the plea to be true, the party injured could not 'maintain an action in respect thereof,' because he had already received satisfaction. Then comes s. 2, which regulates the amount of damages, and provides for its apportionment in a manner different to that which would have been awarded to a man in his lifetime. This section may provide a new principle as to the assessment of damages, but it does not give any new right of action. Mr. Codd was driven to argue that the executor could bring a fresh action even if the deceased had recovered damages in an action; but to hold this would be to strain the words of the section. The intention of the enactment was that the death of the person injured should not free the wrongdoer from an action, and in those cases where the person injured could maintain an action his personal representative might sue.

"LUST, J.—I am of the same opinion. The intention of the statute is, not to make the wrongdoer pay damages twice for the same wrongful act, but to enable the representatives of the person injured to recover in a case where the maxim *actio personalis moritur cum persona* would have applied. It only points to a case where the party injured has not recovered compensation against the wrongdoer. It is true that s. 2 provides a different mode of assessing the damages, but that does not give a fresh cause of action." (p. 556.)

The courts in many of our states, having statutes worded identical with, or in effect the same, as the Lord Campbell Act, have reached the same conclusion. And from this line of authorities has grown the definite rule, that the personal representative cannot maintain the action for wrongful death, unless the injured person had a right of action for his injuries immediately before his death. Hence, in those states it is held that a settlement made by the injured person, after the accident and before his death, for his injuries, is a bar to an action by the personal representative for the wrongful death; and also that such action is barred if an action be brought

by the injured person for his damages, which action goes to judgment and the judgment is satisfied before his death. (17 C. J. 1200; Thornton's Federal Employers' Liability Act, 3d ed., § 188; Tiffany on Death by Wrongful Act, 2d ed., § 124; *Edwards v. Chemical Co.,* 170 N. C. 551; *Perry v. P. B. & W. R. Co.,* 1 Boyce's Del. Rep. 399; *Southern Bell Tel. Co. v. Cassin,* 111 Ga. 575; *Strode v. St. Louis Transit Co.,* 197 Mo. 616; *McGahey v. N. E. R. Co.,* 166 N. Y. 617; *Hecht v. Ohio and Mississippi Railway Company,* 132 Ind. 507; *Hill v. Penna. R. R.,* 178 Pa. St. 223; *Price v. Railroad Company,* 33 S. C. 556; *Brown v. Electric Railway Co.,* 101 Tenn. 252.)

It is possible the supreme court had this in mind when it reserved the question in the Craft case, 237 U. S. 648, 659, for it cited the Vreeland case, 227 U. S. 59, 70, where it is said, speaking of the right of action given for the wrongful death:

"But as the foundation of the right of action is the original wrongful injury to the decedent, it has been generally held that the new action is a right dependent upon the existence of a right in the decedent immediately before his death to maintain an action for his wrongful injury [citing some of the authorities last given.]"

But, the Federal Employers' Liability Act differs from the Lord Campbell Act in that it does not in terms make the personal representative's right to maintain an action dependent upon a right of action in the decedent immediately before he died. This is pointed out in *Seaboard Airline Ry. Co. v. Oliver,* 261 Fed. 1, 4. Hence, the authorities based upon the wording of the Lord Campbell Act and state statutes similarly worded, are not necessarily controlling. In *Southern Bell Tel. Co. v. Cassin,* 111 Ga. 575, 594, it is argued that to permit the injured person to recover, or settle, for his damages, and to hold it possible for the personal representative to recover later for the wrongful death would in some instances permit a double recovery, as where there was a permanent injury and the injured person was paid on the basis of his loss of earning capacity in the future, computed upon his life expectancy, and thereafter dies as a result of the injury. But whatever may be the measure of damages in the state courts, the supreme court has said in at least three cases, previously quoted, what the measure of damages is upon each right of action, under the act in question, and specifically said "the two claims are quite distinct, no part of either being embraced in the other." Under this statute it has been held that the question of the proper measure of damages is inseparably connected with the right

of action and must be settled according to the principles of law as administered in federal courts. (*Ches. & Ohio Ry. v. Kelly*, 241 U. S. 485.)

In some states, where the statute for wrongful death was held to create a new right of action, distinct and independent of any right of action the injured person had in his life time, it has been held that a release executed by the injured person before his death cannot deprive the beneficiary of the right of action for the wrongful death which the statute gives him. In *Rowe v. Richards et al.*, 35 S. D. 201, 215, it was said:

"We must confess our inability to grasp the logic of any course of so-called reasoning through which the conclusion is drawn that the husband simply because he may live to suffer from a physical injury and thus become vested with a cause of action for the violation of his own personal right, has an implied power to release a cause of action—one which has not then accrued; one which may never accrue; one which from its very nature cannot accrue until his death; and one which, if it ever does accrue, will accrue in favor of his wife and be based solely upon a violation of a right vested solely in the wife."

To the same effect is *Blackwell v. American Film Co.*, 209 Pac. 999 (Cal.), citing earlier California cases to the same effect; *Denver Railroad Co. v. Frederic*, 57 Colo. 90; *Maguire v. Traction Co.*, 33 Ohio Cir. Ct. 24; *Milwaukee Coke & Gas Co. v. Industrial Commission*, 160 Wis. 247; *Davis v. Railway*, 53 Ark. 117. It will be noted that these cases hold that the respective rights of action given by the statute are separate and distinct; just as the supreme court holds the rights of action to be under the statute in question.

In *St. Louis & S. F. R. R. Co. v. Goode, Adm'x*, 42 Okla. 784, the injured employee began an action for damages but died pending the action. His administrator brought a separate action for his wrongful death and recovered a judgment which was paid. Later the action brought by the injured employee in his life time was revived under the name of the administrator and upon trial, a judgment recovered. This was affirmed, the court holding that the rights of action were separate and distinct and that the judgment in favor of the personal representative for the wrongful death did not bar recovery under the action brought by the injured employee which was revived.

It is of interest to note the purpose of congress in the amendment to the Employers' Liability Act made in 1910 as stated in *St. Louis & Iron Mtn. Ry. v. Craft*, 237 U. S. 648:

"The original act, as we have said, made no provision for the survival of

Goodyear, *Administratrix*, v. Railway Co.

the right of action given to the injured person, although such a provision existed in the statutes of many of the States. Shortly after the act two cases arose thereunder in each of which the personal representative of an injured employe, who died from his injuries, sought to recover damages for the employe's personal loss and suffering while he lived as well as for the pecuniary loss to the beneficiaries named in the act. In both cases—one in the Circuit Court for the Western District of Arkansas and the other in the Circuit Court for the District of Massachusetts—the right of the injured employe would have survived if the local statutes were applicable, and the ruling in both was that the Federal act was exclusive and superseded the local statutes, that it made no provision for a survival, and therefore that the recovery should be confined to damages for the pecuniary loss resulting to the designated beneficiaries from the death. *Fulgham v. Midland Valley R. R.,* 167 Fed. Rep. 660; *Walsh v. New York, N. H. & H. R. R.,* 173 Fed. Rep. 494. Following these decisions the amendment embodying the new section was proposed in Congress. In reporting upon it the Committees on the Judiciary in the Senate and House of Representatives referred at length to the opinions delivered in the two cases, to the absence from the original act of a provision for a survival of the employe's right of action and to the presence of such a provision in the statutes of many of the States, and then recommended the adoption of the amendment, saying that the act should be made 'as broad, as comprehensive, and as inclusive in its terms as any of the similar remedial statutes existing in any of the States, which are suspended in their operation by force of the Federal legislation upon the subject.' Senate Report No. 432, 61st Cong., 2d Sess., pp. 12-15; House Report No. 513, 61st Cong., 2d Sess., pp. 3-6. While these reports cannot be taken as giving to the new section a meaning not fairly within its words, they persuasively show that it should not be narrowly or restrictively interpreted." (p. 660.)

When we further consider that in Arkansas, where one of the cases arose which caused congress to make the amendment, it had been held that a judgment by the injured person would not bar an action by his personal representative (*Davis v. Railway,* 53 Ark. 117), and in Massachusetts where the other case arose it had been held that the rights of action were so separate and distinct that they could both be prosecuted together (*Bowes v. Boston,* 155 Mass. 344), and that congress intended so to amend the act that it could give relief as fully as any of the state statutes which it supplanted, then it seems congress must have intended that the two rights of action were separate and distinct and that the settlement of one would not be a bar to the other. We are therefore constrained to hold that the giving of Instruction No. 6 was error.

Though not taken into consideration in the conclusion reached, there are two matters which are, perhaps, worthy of note. First, the release signed by Lewis Goodyear did not purport on its face

to release anything but *his* claim for damages to *him*. The only mention in the release of damages for death is in a clause printed in parenthesis reading, "(or of resulting death, if this be executed by an administrator or administratrix of the estate of said person.)" It was not, of course, signed by an administrator or executor, hence this clause is not effective. Second, the evidence clearly shows that the payment made Lewis Goodyear by the defendant was computed upon the basis of time he had lost, being straight time, possibly plus one or two items of expense, from the date of the injury to March 1, 1920. Nothing was paid him for pain and suffering, for which he might have recovered in an action brought by him. This fact would not, of course, invalidate the release so far as he was concerned, as he was at liberty to settle his claim for a sum less than the total amount due him if he wished to do so. Thus it seems clear that in this case nothing was paid in settlement of the right of action for the death, and that the release relied upon does not purport to settle such right of action.

The cause will be reversed and remanded for a new trial in accordance with this opinion.

### APPENDIX A.

Lord Campbell's Act. 9 & 10 Victoriae, chapter 93.)

An Act for compensating the Families of Persons killed by Accidents. [26th August 1846.]

Whereas no action at law is now maintainable against a person who by his wrongful act, neglect, or default, may have caused the death of another person, and it is oftentimes right and expedient that the wrongdoer in such case should be answerable in damages for the injury so caused by him: Be it therefore enacted by the Queen's most Excellent Majesty, by and with the advice and consent of the Lords Spiritual and Temporal, and Commons, in this present Parliament assembled, and by the authority of the same, that whensoever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

II. And be it enacted, that every such action shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executor or administrator of the person deceased; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought; and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided amongst the beforementioned parties in such shares as the jury by their verdict shall find and direct.

III. Provided always, and be it enacted, that not more than one action shall lie for and in respect of the same subject matter of complaint, and that every such action shall be commenced within twelve calendar months after the death of such deceased person.

IV. And be it enacted, that in every such action the plaintiff on the record shall be required, together with the declaration, to deliver to the defendant or his attorney a full particular of the person or persons for whom and on whose behalf such action shall be brought, and of the nature of the claim in respect of which damages shall be sought to be recovered.

V. And be it enacted, that the following words and expressions are intended to have the meanings hereby assigned to them respectively, so far as such meanings are not excluded by the context or by the nature of the subject matter; that is to say, words denoting the singular number are to be understood to apply also to a plurality of persons or things; and words denoting the masculine gender are to be understood to apply also to persons of the feminine gender; and the word 'Person' shall apply to bodies politic and corporate; and the word 'Parent' shall include Father and Mother, and Grandfather and Grandmother, and Stepfather and Stepmother; and the word 'Child' shall include son and daughter, and grandson and granddaughter, and stepson and stepdaughter.

VI. And be it enacted, that this act shall come into operation from and immediately after the passing thereof, and that nothing therein contained shall apply to that part of the United Kingdom called Scotland.

VII. And be it enacted, that this act may be amended or repealed by any Act to be passed in this session of Parliament."

APPENDIX B.

Federal Employers' Liability Act. (35 U. S. Stat. at L. 65, ch. 149.)

§ 1. Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

§ 2. Every common carrier by railroad in the Territories, the District of Columbia, the Panama Canal Zone, or other possessions of the United States shall be liable in damages to any person suffering injury while he is employed by such carrier in any of said jurisdictions, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

§ 3. In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this Act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* That no such employee who may be injured or killed shall

be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

§ 4. In any action brought against any common carrier under or by virtue of any of the provisions of this Act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

§ 5. Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this Act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

§ 6. No action shall be maintained under this Act unless commenced within two years from the day the cause of action accrued.

Under this Act an action may be brought in a [Circuit court] of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this Act shall be concurrent with that of the courts of the several States, and no case arising under this Act and brought in any state court of competent jurisdiction shall be removed to any court of the United States.

§ 7. The term "common carrier" as used in this Act shall include the receiver or receivers or other persons or corporations charged with the duty of the management and operation of the business of a common carrier.

§ 8. Nothing in this Act shall be held to limit the duty or liability of common carriers or to impair the rights of their employees under any other Act or Acts of Congress, or to affect the prosecution of any pending proceeding or right of action under the Act of Con-

gress entitled "An Act relating to liability of common carriers in the District of Columbia. and Territories, and to common carriers engaged in commerce between the States and between the States and foreign nations to their employees," approved June eleventh, nineteen hundred and six.

§ 9. (Added by 36 U. S. Stat. at L. 291, ch. 143). Any right of action given by this Act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury.