No. 41,114

HILDA P. C. PROWANT, Administratrix of the Estate of R. J. Prowant, Deceased, *Appellant*, v. KINGS-X, INC., a Corporation, *Appellee*.

(337 P. 2d 1021)

Opinion filed April 11, 1959.

*Cliff W. Ratner*, of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Gerald D. Lasswell*, and *Edmund R. Learned*, all of Wichita, were with him on the briefs for the appellant.

*Robert H. Nelson*, of Wichita, argued· the cause, and *W. A. Kahrs* and *Patrick F. Kelly*, both of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

JACKSON, J.: In June, 1955, R. J. Prowant, the appellant's intestate, filed an action for personal injuries alleged to have been suffered when a counter stool in appellee's cafe gave way causing him to fall to the floor. Before the action was ready for trial, Prowant died on December 27, 1956. In due course the pending action was revived by the appellant as administratrix (see G. S. 1949, 60-3201). Thereafter, appellant as plaintiff filed her amended· petition containing two causes of action. The first cause was based upon the

injuries suffered by Mr. Prowant in his lifetime and for which he had begun his action prior to his death. In this count, plaintiff sought to recover $50,000 for the benefit of the estate of the decedent. The second cause of action was based upon the provisions of G. S. 1957 Supp. 60-3203, and the plaintiff sought therein to recover $25,000 for the benefit of the surviving widow and children of the decedent based upon the theory that decedent's death had been caused by the injuries sustained in falling from the counter stool in defendant's cafe.

In the first petition filed by the administratrix, the first cause of action as above described did not contain any allegation as to the cause of decedent's death. The appellee as defendant moved that plaintiff be required to set forth whether or not decedent's death occurred as the result of the injuries alleged to have been sustained. The district court sustained the motion to make the count definite, and plaintiff amended by inserting the following allegations:

"The death of plaintiff's decedent was not caused by the fracture of the coccyx or suffering attendant upon this particular injury. Plaintiff's death was caused by the cancerous condition in one testicle and parts of the body adjacent to this, and by the course of this cancerous condition and treatment. This cancerous condition in the body of plaintiff's decedent was caused or aggravated by the jolt and bruising of the testicle complained of herein, according to plaintiff's understanding and belief, which, however, is denied by defendant."

Following this amendment, the district court on motion of the defendant struck the first cause of action from the petition of the administratrix. This appeal is for the purpose of testing the propriety of the court's order.

It cannot be doubted that in making the order appealed from, the learned trial judge followed the interpretation of our statutes made in previous decisions by this court. The appellant is fully cognizant of our former cases, but maintains in a carefully written brief that those cases were wrongly decided in the first instance, have no logical support in reason, and should be overruled.

In the early case of *McCarthy, Adm'r, v. Railroad Co.*, 18 Kan. 46, the court held that the purpose of section 422 of the old civil code was not only to give an action for wrongful death—as had been done under Lord Campbell's act in Great Britain—but that "Section 420 (of the code providing for survival of actions for personal injuries), as construed with section 422, only causes the actions to survive for injury to the person, when the death does not result from such injury, but does occur from other circumstances. The

right of the action under section 422 is exclusive; and an administrator could not maintain an action under section 420 and 422 for the same injury. When death results from *wrongful acts,* section 422 is intended solely to apply." (p. 52.)

Although the McCarthy case has been criticized, this court has cited it on numerous occasions. The following cases recognize the above rule of the McCarthy case to be the law in Kansas, however Lord Campbell's act statutes have been construed in other jurisdictions: *City of Eureka v. Merrifield,* 53 Kan. 794, 37 Pac. 113; *Martin v. Railway Co.,* 58 Kan. 475, 49 Pac. 605; *Sewell v. Railway Co.,* 78 Kan. 1, 13, 96 Pac. 1007; *Goodyear, Administratrix, v. Railway Co.,* 114 Kan. 557, 220 Pac. 282; *Hendrix v. Wyandotte County Commissioners,* 121 Kan. 85, 245 Pac. 1052; *Routh v. List & Weatherly Construction Co.,* 124 Kan. 222, 257 Pac. 721; *Wright v. Smith,* 136 Kan. 205, 14 P. 2d 640.

In the case of *Martin v. Railway Co.,* supra, the rule of the McCarthy case was again brought under attack. The opinion of the court was written by the then Mr. Justice Johnston. After quoting from the McCarthy case substantially as above, the later great Chief Justice of this court continued:

"Since that time, the courts of the State have generally regarded the McCarthy case as a controlling decision, and the construction there placed upon these provisions as a correct one. Quite recently, the same question was re-examined and the ruling then made reaffirmed. *Eureka v. Merrifield,* 53 Kan. 794. It was held that section 420 permits actions to survive for injury to the person only when death does not result from the injury, but occurs from other causes. Where, however, death results from the wrongful act or omission of another, section 422 is exclusive. As tending to sustain that view the following cases are cited: *Andrews v. H. & N. H. Rld. Co.,* 34 Conn. 57; *Read v. Great E. Rly. Co.,* 3 Q. B. 555; *Railroad Co. v. O'Connor,* 19 Brad. (Ill. App.) 591; *Holton v. Daly,* 106 Ill. 131; *C. & E. I. Rld. Co. v. O'Connor,* 119 Ill. 586; Tiffany on Death by Wrongful Acts, § 119.

"The correctness of this interpretation is again challenged, but we think the view so early taken, and which has been generally accepted and acted upon ever since, should be upheld. It is to be noted that, although the rule was announced more than twenty years ago and has been followed by the courts ever since that time, the Legislature has not amended the law nor attempted to modify the rule which the court announced. We think the rule should be upheld, and do not feel warranted in entering anew upon a discussion of its correctness."

The case of *Railway Co. v. Bennett,* 58 Kan. 499, 49 Pac. 606, is a companion case to *Martin v. Railway Co.,* supra, and was handed down on the same day. In the Bennett case the rule of the McCarthy case is not discussed, except to show that a contrary hold-

ing of the Court of Appeals in *Mo. Pac. Rly. Co. v. Bennett's Estate,* 5 Kan. App. 231, 47 Pac. 183, was disapproved, see p. 500 of the Bennett opinion.

Some thirty-five years after the date of *Martin v. Railway Co.,* supra, the rule of the McCarthy case was questioned in *Wright v. Smith,* supra. Thereupon, Mr. Justice Dawson, who also became an eminent Chief Justice of this court, made a careful account of substantially all of the cases adhering to the rule, see page 207 of the opinion, *et seq.* In the Wright case, the wrongdoer as well as the alleged victim had died in an automobile accident, and section 60-3201 of the code of civil procedure did not yet provide for the survival of the action for wrongful death against the estate of the wrongdoer. The statutes were amended to so provide by Laws 1939, Ch. 233, after the decision in the Wright case.

The plaintiff in the Wright case sought to maintain an action for wrongful death despite the fact of the wrongdoer's death. Although perhaps not entirely in point, the question of the McCarthy rule was discussed in the opinion of the court, together with cases from other jurisdictions to the contrary. The court ended its résumé of the authorities as follows:

"If our present question were an open one, these decisions might well be followed. But our precedents running back for half a century cannot be ignored. Moreover, our code has been revised twice since the McCarthy case was decided, and the legislature has been content to let the law stand as this court has interpreted it during this long period." (p. 210)

Now, some eighty-two years after the McCarthy decision, some sixty-two years after the Martin decision, and twenty-seven years after the Wright case, the majority of the court feels bound by the rule of *stare decisis* and adheres to the opinions of Chief Justices Johnston and Dawson to the effect that if the McCarthy rule is to be changed, it should be done by an act of the legislature.

The order of the trial court striking the first cause of action from plaintiff's petition in the court below must be affirmed. It is so ordered.

JACKSON, J., dissenting: Generally, the rule of *stare decisis* is a valuable and venerated guide, but even as to such a rule there are certain definite exceptions. One of these exceptions is that the rule of the case used as a precedent should not be plainly and unmistakably the result of mistake and error. Where the prior case is not supported by some demonstrable reason, it should be overruled.

Lord Coke begins his First Institute of the Laws of England with the following:

"Reason is the life of the law, nay, the common law itself is nothing else but reason."

Certainly, there can be little profit or gain in perpetuating clear error under slavish adherence to the doctrine of *stare decisis*. In 21 C. J. S. 322, Courts § 193, it is said:

"The rule of *stare decisis* is not so imperative or inflexible as to preclude a departure therefrom in any case, but its application must be determined in each case by the discretion of the court, and previous decisions should not be followed to the extent that error may be perpetuated and grievous wrong be the result. Accordingly, unless a doctrine or principle has become so well established that it may fairly be considered to have become a rule of property, as explained infra § 216, the courts will not adhere to it, although established by previous decisions, if they are convinced that it is erroneous, even though it may have been reasserted and acquiesced in for a number of years, especially if the former decisions are injurious or unjust in their operation."

It may be noted that not one of the cases cited in the majority opinion as adhering to the rule of *McCarthy, Adm'r, v. Railroad Co.*, 18 Kan. 46, attempts to support the holding of the court on the facts of the case or on the meaning of the sections of the civil code of procedure there involved. In fact, it would seem a reading of sections 60-3201 and 60-3203 would under ordinary understanding of the English language lead one to an opposite result. A study of the background of the two sections of the civil code only increases the conclusion that some error has occurred.

At common law, one who had suffered injury to his person because of the alleged neglect of the defendant, as alleged in the case at bar, had a cause of action against the defendant sounding in the form of action of trespass on the case. But at common law such action did not survive the death of the plaintiff or of the defendant. Section 60-3201, or section 420 under the old code, was enacted to remedy that situation and provide that the already existing action might survive and continue to be maintained regardless of the death of the parties. It will be noted that the section has never been qualified in any manner either under the old code or as now found in the statute book. The statute simply says the action survives.

At common law, if a man were killed by the wrongful act of another, his family or next of kin had no cause of action although they might have suffered grievous pecuniary loss. The widow and

children might have suffered the loss of their only financial support. Thus, in 1846 Lord Campbell's act was enacted by the parliament of Great Britain to provide a *statutory cause of action* in favor of the widow and next of kin to compensate them for the losses they might well have suffered due to the loss of husband and father. The various states of the union were quick to pass similar laws patterned after Lord Campbell's act. Attention is directed to the more complete history of the British act as explained by Mr. Justice Harvey in *Goodyear, Administratrix, v. Railway Co.*, 114 Kan. 557, 562, 220 Pac. 282, and also to a complete text of Lord Campbell's act appended to the Goodyear case, page 572. The Goodyear case involves a construction of the federal employer's liability act by Mr. Justice Harvey reaching a conclusion at variance with the McCarthy case.

Before leaving the sections of the civil code here involved, it may be noted that the opinion in the McCarthy case seems to have been in error in saying that the two sections of the civil code were statutes *in pari materia.* It would appear that section 420 first appeared in Terr. L. 1858, Ch. 11, §§ 398, 399 and Terr. L. 1859, Ch. 25, § 410, while section 422 made its first appearance in the General Statutes of 1868.

Further consideration of the facts of the McCarthy case will show that the rule for which it has become known was apparently *obiter dictum* at the time of the opinion and regarded as such by the court. The rule now under discussion is not contained in the syllabus of the McCarthy case as reported (see G. S. 1949, 20-111, formerly G. S. 1868, Ch. 27, § 10).

The facts of the McCarthy case were quite simple. Plaintiff's intestate was injured while working in the employment of the Chicago, Rock Island and Pacific Railroad Company in the state of Missouri. It was alleged that the railroad company had caused the injury by its negligence and that the injured man had been brought to his home in Kansas where he died as a result of his injuries. The plaintiff's cause of action was based upon G. S. 1868, Ch. 80, § 422, the Kansas wrongful death act. The court patiently explained that plaintiff had misconceived his remedy and that if any remedy existed, it would exist under the wrongful death statute of Missouri. The court further explained that under the practice at that time it was unable to take judicial notice of the Missouri act since the same had not been pleaded or relied upon. The

court then referred to the survival statute, section 420 of the civil code, although the court again stated that section 420 had not been pleaded, see page 52. Following this introduction, the court made a statement which became the law of the state.

It will be noted that Mr. Justice Brewer was a member of the three judge court which decided the McCarthy case. Only a few years later, Mr. Justice Brewer repudiated his own part in the McCarthy decision while sitting as Judge of the United States District Court. In the case of *Hulbert v. City of Topeka,* 34 Fed. 510, Judge Brewer said in part:

"I was a member of the supreme bench of Kansas at the time this opinion was filed and concurred in it. I feel constrained to follow that decision; and yet I may be permitted to say that my examination of this case has led me to doubt the correctness of that conclusion, for the measure of damages and the basis of recovery under the two sections are entirely distinct. Section 422 gives a new right of action,—one not existing before; an action which is not founded on survivorship; an action which takes no account of the wrong done to the decedent, but one which gives to the widow or next of kin damages which have been sustained by reason of the wrongful taking away of the life of the decedent. It makes no difference whether the injured party was killed instantly, or lived months; whether he suffered lingering pain or not; whether or not he was put to any expense for medical attendance and nursing. None of these matters are to be considered in an action under section 422; and the single question is, how much has the wrongful taking away of his life injured his widow or next of kin? It is an action to recover damages for the death, and in no sense a survival of an action which accrued to the decedent before his death; whereas, on the other hand, section 420 provides for the survival of an action which the decedent himself had in his life-time. Suppose, as in this case, the decedent lived a long time after injury; was put to great expense for medical attendance and nursing,—for these matters which work a loss to the estate, she had a right of action in her life-time. That action, it is which, by section 420, survives." (p. 513)

Judge Brewer cited cases from other jurisdictions and continued:

"It is obvious that both of these causes of action may exist against two different parties, and why may they not exist against the same party? Suppose A. commits an assault and battery upon B., a cause of action exists in favor of B. against A. for those injuries which survives by section 420. Suppose, after such action is instituted by B., he should be killed by the wrongful acts of C. There certainly would be an action under section 422 against C. for such wrongful death. Would that defeat the first action, or would not that survive, as provided under section 420? If that be true where there are two wrong-doers, why should it not also be true where there is but one wrong-doer?" (p. 514.)

The majority opinion notes that the Kansas Court of Appeals in the case of *Mo. Pac. Rly. Co. v. Bennett's Estate,* 5 Kan. App. 231,

47 Pac. 183, refused to follow the rule of the McCarthy case. The well written opinion of Judge Garver appears in the reports and need not be quoted here.

It may be noted that authors connected with both the University of Kansas Law School and the Washburn University Law School have criticized the rule of the McCarthy case in the issues of the Journal of the Kansas Bar Association, see *Damages for Personal Injuries When Death Ensues*, 17 J. B. K. 258, and *Wrongful Death Actions*, 22 J. B. K. 150.

Without endeavoring to pursue the cases in other jurisdictions, it may simply be noted that the large majority of states are united in refusing to follow such a rule as announced in the McCarthy case, see 25 C. J. S. 1080, § 16, notes 20 and 21. In 16 Am. Jur. 48, § 61, it is said:

"The view which is believed to be based upon the better reasoning that wrongful death statutes are not 'survival statutes,' but create a new cause of action, is the one supported by the courts generally and by the later trend of authority in particular. Under this view, the cause of action is not for the injury to the decedent, but is for the loss sustained by the beneficiaries because of the death and is distinct from any cause of action that the deceased might have had if he had survived."

It should be noted in conclusion that the binding effect of the rule of *stare decisis* depends to a large extent upon the area of the law covered by the decision later determined to have been erroneous. A rule of property or a rule under which men are accustomed to govern daily actions or acquire interests will be changed by the courts only with extreme reluctance and caution if at all. But in this case, we are dealing with a matter of court practice. Civil procedure is at least primarily a matter to be governed by the decisions of the courts. In 1938, the American Bar Association adopted the report of its Section of Judicial Administration reading as follows:

"That practice and procedure in the courts should be regulated by rules of court; and that to this end the courts should be given full rule-making power." (See Minimum Standards of Judicial Administration, edited by Arthur T. Vanderbilt, p. 91.)

On the same page of his book Mr. Chief Justice Vanderbilt comments upon the above suggestion as follows:

"While it has been asserted by no less an authority than Dean Wigmore 'that the legislature (federal or state) exceeds its constitutional power when it attempts to impose upon the judiciary any rules for the dispatch of the judiciary's duties; and that therefore all legislatively declared rules for procedure, civil or criminal, in the courts are void, except such as are expressly

stated in the Constitutions,' since the advent of the Field Code in New York in 1848 the legislatures of many states have completely dominated this field. The recommendation approved by the American Bar Association in 1938, however, for 'regulation of procedure by court rule is not an innovation, but a return to fundamental principles.' The regulation of procedure by the legislature has had deleterious effects, leading to an unwise division of responsibility for the administration of justice between the legislature and the courts. The harassing inflexibility of legislative-made practice and procedure has resulted not only in a flood of judicial decisions construing procedural statutes, but also in continual legislative tinkering with such statutes. The committee of the Section of Judicial Administration which examined these questions not only recommended the withdrawal of the legislature from the field of procedure and the authorization of rule-making by the courts, but also that the rules so made supersede previous legislative action. The committee recommended that the rule-making function be vested in the court of last resort, with power in other courts to make supplemental rules essential to local needs; and that the court should be aided by expert advice, such as judicial conferences, judicial councils, and committees of the bar, in exercising the rule-making power."

As to the control of court procedure prior to 1848 and the passage of the Field Code in New York, see l. c., p. 514. Attention is also directed to *Cain v. Miller,* 109 Nebr. 441, 448, 191 N. W. 704, 30 A. L. R. 125; and *L. & N. R. Co. v. Hutton,* 220 Ky. 277, 295 S. W. 175, 53 A. L. R. 1328.

One question remains in this case. What happens if plaintiff herein fails to prove that the decedent's cancer was caused or aggravated by the trauma suffered in falling from the stool?

When a former statement made by this court is clearly in error and when no one will be injured by a correction of the rule of law for the future, I believe this court should be bold enough to state the correct rule rather than continuing to perpetuate the error until the legislature may come to our rescue.

I am authorized to state that Mr. Justice WERTZ and Mr. Justice SCHROEDER concur in the foregoing dissenting opinion.