# Louisville & Nashville Railroad Company v. Hutton.

(Decided March 18, 1927.)

(Rehearing Denied, with Modification, June 24, 1927.)

## Appeal from Kenton Circuit Court.

1. Negligence.—Doctrine of attractive nuisance held inapplicable in injury to 14 year old boy when attempting to operate crank on crane maintained by railroad while trespassing on its property, in absence of evidence that such child did not possess sufficient intelligence and discretion to be responsible for his acts, since, in view of Ky. Stats., sections 331a-1, 2022, 2097, 2739g-34, prima facie presumption arises that he is aware of consequences of trespass on property of another.

2. Negligence.—Doctrine of "attractive nuisance" is never applicable except where the plaintiff is trespasser, being founded on theory that one maintaining attractive and dangerous contrivance on premises exposed to contact by indiscreet children of tender years has duty of exercising ordinary care for their protection.

3. Courts.—In order to bring an opinion within the doctrine of stare decisis, and to thereby give it the force of precedent, the first opinion must have not only involved question, but it must have been presented and decided.

4. Courts.—Where no rule of property or statutory or constitutional construction is involved, doctrine of stare decisis does not prevent court from declining to follow decision and correcting erroneous holding.

S. D. ROUSE, WOODWARD, WARFIELD & HOBSON and ASHBY M. WARREN for appellant.

NORTHCUTT & NORTHCUTT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Between its side track and a street in the city of Covington, appellant and defendant below, Louisville & Nashville Railroad Company, owns a lot upon which at the time of the injuries herein complained of it maintained a crane constructed on a platform which it and its patrons used for the purpose of loading and unloading upon or from its cars heavy articles of freight. The crane was principally constructed for and used by a nearby manufacturer and repairer of boilers and heavy machinery, much of which would be shipped to its local plant from distant points on defendant's cars from which it would be unloaded with the assistance of the crane, and in like manner it would be employed in reshipping the same

articles to the owners, and the same was true as to new machinery sold by the local manufacturer, although others having occasion to use it for either loading or unloading heavy freight would do so; it, of course, being located near to defendant's side track. The crane revolved so as to allow the beam to swing around over a standing car on the side track and then to swing around and away from the car so as to reach the place where it would deposit or pick up the unloaded freight. A hook was attached to a chain or an iron rope running through a pulley at the upper end of the beam, and the rope or chain wound around a windlass near the lower end of the beam and which was operated by turning a large wheel with cogs fitting into a smaller cogwheel.

On March 26, 1924, plaintiff and appellee, Ludie Hutton, a boy who was then 14 years and 7 months old, together with other boys, most of whom were younger, were playing upon the vacant lot and finally went to the platform of the crane and found that the crank had been taken from it and put into a nearby toolhouse, which, under the proof, was kept locked when the crane was not in use. It was furthermore proven without contradiction that on several occasions the lock had been broken and the crank taken out and atached to the wheel on the crane, all of which was done by trespassing boys who had been warned to desist from such conduct and also warned to not play either upon the crane or on the lot, but plaintiff says that he had never been given any such warning. On the day mentioned, while the crank was in the adjoining toolhouse, plaintiff undertook to turn the large wheel with his hands and without the crank so as to raise or lower the hook suspended from the upper end of the beam, and while doing so some of his fingers were severely mashed in the cogs of the large and small wheels, and he brought this suit by his mother as guardian against defendant, to recover damages for his injuries upon the theory advanced in that class of cases commonly known as the "Turntable Cases" and which has come to be known and understood as the doctrine of "attractive nuisance." Proper pleadings made the issues, and upon trial the jury under the instructions of the court returned a verdict in favor of the plaintiff for $1,500.00, upon which judgment was rendered after defendant's motion for a new trial was overruled, and it prosecutes this appeal.

Some minor rulings of the court are complained of and urged as reversible errors, but which we do not regard as meritorious. The chief ground urged for reversal is the failure of the court to sustain defendant's motion for a peremptory instruction in its favor upon the theory that plaintiff, being over 14 years of age at the time, was prima facie presumed to possess sufficient intelligence and discretion to be responsible for his acts, and, in the absence of evidence to the contrary, he was not entitled to the benefit of the attractive nuisance doctrine. That contention directly raises for the first time before this court the question as to at what age a prima facie presumption arises disentitling a person under the age of 21 years to the benefits of the doctrine under consideration without additional evidence showing that he came within the doctrine because of his subnormal mental condition below that of a normal infant of his age.

To begin with the doctrine is never applicable except where the plaintiff is a trespasser. If he sustains his injuries while at a place where he has a right to be, then the defendant is presumptively liable therefor if negligent, regardless of whether the plaintiff is an infant or an adult. The reason why the latter might not recover under the "attractive nuisance" doctrine, when an infant might do so is because the adult, like the infant, would be a trespasser, but on account of his matured mind and discretion he would be responsible for his own trespassing, while the infant, *if of tender years* and consequent indiscretion, would not be responsible for his trespasses. So that, the doctrine is founded upon the theory that if one maintains an attractive and a dangerous contrivance on his premises and it is exposed to contact by *indiscreet* children of *tender* years, and he has knowledge that they are in the habit of playing upon or around the premises where such contrivance is maintained, it then becomes his duty founded on humane considerations to exercise ordinary care for the protection of such indiscreet and youthful trespassers, who are attracted to and brought in contact with the danger and their lack of appreciation of it on account of their youth and consequent indiscretion, although they are trespassers. The above general principles are so well founded and have been repeated by the courts so often that we deem it unnecessary to refer to or cite the cases. What we have said is sufficient

to clearly point out that without the youthful indiscretion on the part of the infant there would be no duty on the part of the maintainer of the contrivance to render it reasonably safe for trespassers. But when the injured person arrives at such an age as to remove him, either presumptively or actually, from the class of youthful and indiscreet persons, he clearly would not be entitled to the benefit of the doctrine any more so than a normal adult, unless he shows that although he was of sufficient age to remove him from the protection of the rule, yet on account of his undeveloped mental condition he was entitled to be classified with those for whose benefit the doctrine was created. There was no effort or pretense in this case to show any such subnormal mental condition on the part of plaintiff, and the question to be determined is: . Whether his age (14 years and 7 months) was sufficient to raise the prima facie presumption that he was respon- . sible for his trespassing upon defendant's premises, and in attempting to manipulate its crane, and because thereof he was sufficiently developed to appreciate the consequence of his act in doing so and, therefore, respon- · sible for the consequences as if he had been an adult trespasser.

In disposing of the question it is not our purpose to . enter into a discussion of the origin of this doctrine, nor the grounds upon which it is founded, nor the many cases from this court in which it was involved, since the question for determination under this record only relates to the prima facie presumption supra. It might, however, be appropriate to say that, since the doctrine itself is an innovation upon the rule disallowing a cause of action to an admitted trespasser upon the premises of another, the tendency of courts in later years has been to narrow instead of enlarging it, as will be seen from the cases of Mayfield Water & Light Co. v. Webb's Adm'r, 129 Ky. 395, 111 S. W. 712, 33 Ky. Law Rep. 909, 18 L. R. A. (N. S.) 179, 130 Am. St. Rep. 469, and many cases cited in the · opinion in the case of Coon v. Kentucky & Indiana Terminal R. Co., 163 Ky. 223, 173 S. W. 325, L. R. A. 1915D, 160. It had its origin from injuries received by infants · of tender years in manipulating turntables constructed for the use of railroads in turning around engines and · cars, and for some time, and even now, it is referred to as the doctrine of the "Turntable Cases." . It seems to .

have been first announced and applied in this country by the Supreme Court of the United States in the case of Sioux City & Pacfic R. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745. But the same court manifested a disposition to qualify the doctrine, as originally announced by it in the Stout case, in the comparatively recent ones of United Zinc & Chemical Co. v. Britt, 258 U. S, 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28, and New York, N. H. & H. R. Co. v. Fruchter, 260 U. S. 141, 43 S. Ct. 38, 67 L. Ed. 173. It was a step, comparatively easy as well as just, to apply the doctrine to other contrivances than turntables under facts justifying it; hence, the doctrine is now more familiarly known as that of "attractive nuisances" which this court has steadfastly applied in a great number of cases, the most of which will be found in the cases we have already cited, and in those we shall hereinafter refer to. Therefore, what we shall have to say in this opinion is not intended as a retraction or a qualification of the doctrine as heretofore recognized and applied by this court.

In arriving at the correct solution of the question before us, a brief inquiry into the law of contributory negligence as applicable to persons under 21 years of age will be of material aid and assistance. The text in 29 Cyc. 539, under the heading of "Age at Which Contributory Negligence is Chargeable," says, "Children of 14 years or over are presumptively chargeable with contributory negligence," and a number of cases are cited in note 75 to the text which upon examination we find support it. In 20 R. C. L. p. 128, par. 106, the compiler of the text states that a child under 7 years of age will be presumed not guilty of contributory negligence, but between that and 14 years of age the presumption of incapacity for responsibility on the ground of contributory negligence continues, but may be rebutted by counter testimony, and if done it is then a question for the jury, and the text then says, "With regard to children of 14 years and over the presumption is that they have capacity and understanding sufficient to constitute contributory negligence," but that presumption is only a prima facie one and may be rebutted by counter testimony. In note 14 to the text cases are cited from a great number of the courts of the Union, including that of U. S. Natural Gas Co. v. Hicks, 134 Ky. 12, 119 S. W. 106, 135 Am. St. Rep. 407, 23 L. R. A. (N. S.) 249.

In volume 1, Jones' Commentaries on Evidence (Ed. 1913) section 99a, the learned author discusses the question now under consideration with much force and logic and upon the direct question under consideration he says:

"This prima facie presumption continues in its (the infant's) favor till it reaches another age, usually fourteen, after which the presumption changes, and the burden is then on the infant to show want of capacity or understanding. The question as to whether a child's capacity is such that it may be chargeable with contributory negligence is a question of fact for the jury, unless so young and immature as to require the court to judicially know that it could not contribute to its own injury or be responsible for its acts, or so old and mature that the court must know that, though an infant, yet it is responsible. Where the infant is under fourteen years of age, the burden rests upon the defendant to rebut the legal presumption of incapability of contributory negligence."

And the last sentence in the section says:

"But it has been held that, in the absence of proof to the contrary, a child of fourteen years of age is presumed to have sufficient capacity to be sensible of danger and to have the power to avoid it."

We could multiply authority almost ad infinitum to the same effect, but since there are few if any cases to the contrary we deem it unnecessary to do so. From the rule as thus established it would seem to necessarily follow that if an infant has arrived at the age (14 years according to the authorities supra) to render him presumptively responsible for his contributory negligence, he would likewise be responsible when that negligence was committed by him while trespasing upon the property of another and be injured while doing so, since if responsibility attaches to him on account of his contributory negligence when he is at a place where he has the right to be, it should also at least prima facie operate against him when he is at a place where he does not have the right to be. Under such presumption, he would be estopped to say that solely on account of his youthful indiscretion his trespassing acts should be overlooked, and he be immune

from the consequences of his conduct while he was such a trespasser.

But, passing that phase of the case, and coming directly to the law as applicable to attractive nuisances, we find that the text in R. C. L. supra, page 90, par. 80, in discussing the age of the injured child refers to a number of cases wherein the action was dismissed upon the ground that plaintiff was of sufficient age to relieve defendant of responsibility, and none of them was as old as 14 years. By a reference to the cases referred to in that text we do not mean to be understood as approving the maximum limit adopted by those courts (they being below 14 years of age), but we refer to it only for the purpose of emphasizing the fact that in applying the attractive nuisance doctrine courts generally are disposed to adopt a maximum age limit at and above which the prima facie presumption of responsibility will arise, and that the infant plaintiff in such cases. in order to recover, must go further and show that although he was of the proven age, yet on account of faulty mental development he was entitled to the benefits of the doctrine contended for and upon which his cause of action was based. In 36 A. L. R. 28, the Britt case from the Supreme Court, supra, is reported, and beginning on page 37 of that volume is an extended note on the subject of attractive nuisances. Cases from the highest courts of all the states in the Union are referred to, discussed, and classified, and on page 141, under the subtitle of "Age Limit for Application of Doctrines," a number of cases are cited on the question of the maximum age of the infant at and beyond which it would be presumed that he was of sufficient discretion to be responsible for his acts, and therefore, presumptively not entitled to the benefit of the doctrine, and in none of them was such maximum age beyond 14 years.

Some of those cases with the ages of the infant plaintiff are: Hanna v. Iowa Cent. R. Co., 129 Ill. App. 134 (12 years old); Pierce v. United Gas & Electric Co., 161 Cal. 176, 118 P. 700 (13 years old); Devine v. Armour & Co., 159 Ill. App. (13 years old); Briscoe v. Henderson Lighting & Power Co., 148 N. C. 396, 62 S. E. 600, 19 L. R. A. (N. S.) 1116 (13 years old); Barnhill's Adm'r v. Mt. Morgan Coal Co. (D. C.) 215 F. 608 (in which Judge Coch-

ran held that the age limit of children, entitling them to
the benefit of the protecting doctrine of attractive nui-
sances, would not apply when the infant was between 14
and 15 years of age) ; Pollard v. Oklahoma City R. Co.,
36 Okl. 96, 128 P. 300, Ann. Cas. 1915A, 140 (14 years old) ;
Central of Georgia R. Co. v. Robins, 209 Ala. 6, 95 So.
367, reported in 36 A. L. R. 10 (14 years old). In the lat-
ter opinion the court said:

> "It seems clear that 'a child of tender years'
> cannot be one who is more than 14 years of age,"
> since after that age "all infants are prima facie pre-
> sumed to be capable of the exercise of judgment and
> discretion, and are therefore subject to the law of
> contributory negligence when they seek to recover
> for personal injuries."

The application of the doctrine was denied in the
case of Shaw v. Chicago & A. R. Co. (Mo. Sup.) 184 S. W.
1151, by the Supreme Court of Missouri, where the infant
plaintiff was 15½ years old, and in the opinion the court
said:

> "The industry of counsel has unearthed one case
> applying the doctrine to a 14 year old boy. That case
> was exceptional in its facts." (It was Biggs v. Con-
> solidated Barb-wire Co., 60 Kan. 217, 56 P. 4, 44 L.
> R. A. 655.)

The court continuing its opinion said:

> "A part of the doctrine, the basis of it, is that
> the injured person is of such tender years that the
> 'attractive nuisance' would so appeal to childish im-
> pulses, as, in a sense, to constitute an invitation, and
> that such appeal should be foreseen and care taken to
> prevent evil consequences. We are of the opinion
> appellant is not shown to be within the class to which
> the doctrine applies."

Supplemental annotations on the same subject are to
be found in 39 A. L. R. beginning on page 486, and 45 A.
L. R. beginning on page 983, and the diligent search of the
editorial staff of that most excellent publication was un-
able to find any case (where the point was actually de-
cided), except the Kansas one where the doctrine was ap-
plied when the infant was as much as 14 years of age,
unless he showed himself entitled thereto because of his

subnormal mental condition. In our own Hicks case, supra, which was one involving the attractive nuisance doctrine, we said in the course of the opinion:

> "The proof shows, without contradiction, that appellee was only 8 years old at the time he received his injuries, an age at which the legal presumption is that he was not accountable for his conduct. He did not realize nor fully appreciate his situation and the probable result which might come to him. The general rule is that, when a child reaches the age of 14 years, the legal presumption is that it knows right from wrong, and is responsible for its acts."

The question was practically disposed of by us in favor of the prima facie presumption herein contended for by defendant's counsel, in the case of Stephens v. Stephens, 172 Ky. 780, 189 S. W. 1143. In that case defendant put some dynamite caps in a trunk located in a room to which children had access. A boy "about 14 years of age" took some of the caps from the trunk and afterwards gave them to a much younger companion, and one of them was afterwards exploded in a manner to injure the latter's hand. A judgment in favor of defendants was affirmed by us upon the ground that the negligence of the defendants in leaving exposed the caps in the trunk to which children has access was not the proximate cause of plaintiff's injury, because the active conduct of the 14 year old boy was an intervening *responsible* one so as to render his delivering the caps to plaintiff the primary proximate cause of the injury. It was pointed out in that opinion, adopting the language of 11 R. C. L. 666, that—

> "Independent acts of intelligent responsible human beings of such degree and character as would break the chain of sequence, may so insulate the owner's original negligence as to make it the remote and not the proximate cause of the injury."

The text in 29 Cyc. 499 was also cited in substantiation of the sufficiency of the intermediate cause so as to relieve the originally negligent party from the final consequences of his negligence on the ground that the latter was the remote and not the proximate cause of the injury. The direct question in the Stephens case was: Whether the conduct of the 14 year old boy produced such a *re-*

*sponsible* intervening cause as to break the chain of sequence flowing from defendant's original negligence, and which for the purposes of that opinion was conceded. We held that it was, and for that reason alone affirmed the judgment in favor of defendant.

However, it was said in that opinion that—

> "If it had been alleged that Whetzell Stephens (the one who gave the caps to the infant plaintiff), on account of his age and mental development, was incapable of appreciating the danger of handling the dynamite caps, and that his parents knew this, but, notwithstanding, permitted him to do so, and to keep them where he had access to them, and that he in this way obtained them and delivered them to the appellant, not knowing or appreciating the danger, then a cause of action undoubtedly would have been stated."

But it may be insisted that the cases of Ky. Central R. Co. v. Gastineau, 83 Ky. 119, and Union Light, Heat & Power Co. v. Lunsford, 189 Ky. 785, 225 S. W. 741, upon which counsel for plaintiff relies, announces a contrary rule than the one supported by the cases and authorities supra, and applied the attractive nuisance doctrine for the benefit of infants over 14 years of age. A careful reading of those opinions, however, will demonstrate that the point under discussion was neither adjudged, relied on, discussed, or decided in either of them. It so happens that the infant plaintiffs in each of them was slightly over 14 years of age, but, we repeat, that fact was not discussed in either opinion, nor did the court rest its conclusions upon it. It seems to have assumed in each of them (because no doubt of the fact that it had not been presented or urged in briefs) that the doctrine applied *irrespective* of the age of plaintiff, and therefore proceeded to determine the cases without discussing or deciding the point.

Under the principles underlying the stare decisis doctrine, and which is the basis of former opinions *as precedents*, it is doubtful whether either of those opinions could be so classified, since to bring an opinion within the doctrine, and to thereby give it the force of a precedent, the first opinion must have not only involved the question,

but it must have been *presented* and *decided*. The text in 7 R. C. L. 1003, par. 31, says:

> "The doctrine of stare decisis contemplates only such points as are actually involved *and determined* in a case." (Our italics.)

We have seen that the question now under consideration, although it may have *appeared* in the Gastineau and Lunsford cases, was neither *presented* nor *determined* in either of those opinions, except in a *passive* way. Moreover, the doctrine has never been given the force of depriving courts of the right to correct an erroneous holding. They are at liberty to do so at any time, unless, perhaps, in cases where the rule established by the prior opinions has become a rule of property, and rights have been acquired and adjusted thereunder, and others (not including tort actions) in which cases the doctrine applies with much more compelling and mandatory effect. When, however, as in this case, no such rule of property, or statutory or constitutional construction is involved, the doctrine does not prevent us from declining to follow the Gastineau and Lunsford opinions; even if they expressly held as contended by appellant's counsel, but which, as we have seen, they only passively did so.

The comparatively recent case of Kentland Coke & Coal Co. v. Keen, 168 Ky. 863, 183 S. W. 247, 1916D, L. R. A. 924, discusses the binding force of the *stare decisis* doctrine, and it fully substantiates what we have said with reference thereto. Other cases and authorities are cited in that opinion, and the authorities everywhere are in harmony with it. Upon the question as to the force and effect of the doctrine, see 7 R. C. L. 1001, par. 30. Clearly, no number of prior decisions can create a right of action against an alleged tort-feasor and in favor of the one damaged by the tort, if under basic principles of the law no such cause of action, in justice, should be allowed, although it erroneously may have been so held in any number of former opinions. We have found that courts everywhere refuse to apply the attractive nuisance doctrine, where the infant was as much as, or more than, 14 years of age, and the Gastineau and Lunsford opinions (if accepted as holding to the contrary) are in direct conflict with the correct rule as so announced, and they are also in conflict with this court's opinions in the

: Keen and Stephens cases, supra, both of which are later than the Gastineau case, and the second one of which was not followed in the Lunsford opinion, but which should have been done, if counsel's contention as to the force and effect of the stare decisis doctrine is correct.

Independently, however, of the foregoing condition of the adjudicated law, the Legislature of this state has enacted certain statutes clearly indicating that an infant who is as much as 14 years of age has, at least presumptively, passed beyond youthful indiscretion and immature judgment and was thereby enabled to exercise discretion in matters of most vital importance to him. Under the provisions of section 2022 of the Statutes, he may choose his own guardian after arriving at the age of 14 years. Under the provisions of section 331a-1 he may be employed in certain avocations, and under the provisions of section 2739g-34 he may drive an automobile on the public highway when accompanied by an older person. Lastly, and perhaps the most important of all, he may, under the provisions of section 2097, enter into the marriage relation after he reaches the age of 14 years. Necessarily, the legislative permission for an infant of that age to do the things enumerated is based upon the theory that after attaining to it he may be depended on to exercise the proper discretion, judgment, and care necessary therefor. For us, then, to hold that not even a prima facie presumption is to be indulged to that effect when the infant arrives at that age, would be to say that an infant old enough to enter into the solemn bonds of matrimony was still too young and indiscreet to be charged with the consequences of his trespasses upon the property of another.

In view of all of the foregoing, we are disinclined to follow counsel's interpretation of those opinions; but, on the contrary, we are persuaded that the prima facie presumption herein discussed should be applied in this and similar cases and which would authorize the peremptory instruction asked for by defendant.

Wherefore, the judgment is reversed, with directions to grant the new trial and for proceedings consistent with this opinion.