JOHN H. VAN ALST AND CATHERINE VAN ALST v. KANSAS CITY, MISSOURI, A MUNICIPAL CORPORATION.—186 S. W. (2d) 762.

Kansas City Court of Appeals. March 5, 1945.

*Wm. E. Kemp, John J. Cosgrove* and *T. James Conway* for plaintiff in error.

*R. C. Southall* for defendants in error.

SPERRY, C.—John H. and Catherine Van Alst, husband and wife, plaintiffs herein, sued Kansas City, Missouri a Municipal Corporation, defendant, for damages caused by the drowning of plaintiffs' son in a pond located within the city limits of Kansas City and on real estate alleged in the petition to be owned by the Samuel Estate Company and by Clarke W. Brooks. Thereafter, on motion of defendant Kansas City, the Samuel Estate Company and Clarke W. Brooks were made parties defendant but said last named defendants were discharged on demurrer before trial. Trial to a jury resulted in a verdict and judgment in the amount of $3500, in favor of plaintiffs

and against defendant Kansas City, Missouri. The case reaches this court on writ of error.

Defendant predicates error on the overruling of its demurrer at the close of all of the evidence. This necessitates a review of the facts, of which there was substantial evidence, from a standpoint most favorable to plaintiffs' right of recovery.

Many years prior to the drowing of plaintiffs' son defendant constructed what is known as Gooseneck Sewer, on a right of way condemned and used for said purpose. The sewer follows the bed of Gooseneck Creek, excepting that it cuts off the curves, in a northwesterly direction across Independence Avenue, in Kansas City, and empties into the Blue River. Since the construction of the sewer the surface water of the area formerly drained by Gooseneck Creek is carried by said sewer.

The sewer runs straight at the point where the accident occurred, thereby cutting off a bend of the creek. The sewer, together with dirt deposited from construction of the sewer, constitutes a dam across the lower part of this bend, thereby preventing the surface water which accumulates in the old creek bad at this point from draining out. No outlet for said water so accumulating was provided. Shortly after the sewer was constructed a body of water formed in this bend, known as Gooseneck Pond. At the time of the accident the northerly end of the pond was some 75 feet south of the sewer and was approximately 130 feet long, 25 to 30 feet wide and ranged in depth from a foot or so to 8½ feet. It was about 180 feet south of Independence Avenue, a paved thorofare, and 130 feet west of White Avenue, an unpaved by passable street in a residential area. It was located on privately owned land and, in order to reach it, it was necessary to travel over private property. It was located in a corn field and was not visible from any public street. One side was protected by a steep 10 foot high bank, and large trees grew around it. The area had been, or was being used by unidentified persons as a dumping place and there were tin cans, boxes, boards and other debris floating on the water's surface. The water was stagnant and of a greenish color. It was an altogether unsightly and unsanitary pool of water. The general conditions existing at the time of the drowning were not materially different from what they had been for many years prior thereto, although there was more water in the pond during wet seasons than there was during the dry summer months.

The evidence was to the effect that for many years prior to the accident, after the construction of the sewer and the formation of the pond, boys used it as a swimming hole. Various citizens who resided in the vicinity had many times reported this fact to the officers and agents of defendant and had requested that defendant take necessary steps to stop this practice. Such complaints were chiefly based on the unsanitary condition of the place and of the water.

On April 24, 1942, Alfred Van Alst, a boy then 14 years and 5 months of age and a student in grade 7A at a nearby school, and several schoolmates were dismissed from school at about 3:00 or 3:30 P. M. The sun was shining and the temperature was about 75 degrees. They discussed going swimming. Alfred, Wayne Murphy, 12 years of age at the time and grade 7B, and Douglas McDaniel, another schoolmate, went to a store and got some candy and ran down to the pond. One of the boys was pretty warm when they arrived at the pond. Shortly after they arrived two other schoolmates, Buddy Grady and Robert Sousley, also arrived. Some talk was had about going swimming and some of the boys present told Alfred that he had better not go in, that he could not swim. Alfred said he could swim and that he would prove it. He removed his clothing, dived in on his stomach, came up about 7 or 8 feet from shore, and began pounding the water with his arms. He was red in the face and "doubled up." H ecalled for help, sank and was drowned.

Alfred was a bright, intelligent boy, worked at a bakery in spare time, and made average grades in school. His father had taught him to swim and testified to the effect that the boy could swim. This was the first time he had gone swimming during that season. His father had told him not to go swimming anywhere or at any time unless he, the father, were present. He had particularly forbidden him to swim in "Gooseneck Pond" under penalty of punishment.

Plaintiffs pleaded and submitted the following specifications of defendant's negligence: "(1) Causing and permitting said Gooseneck Pond to exist within the corporate limits of Kansas City, in a residential neighborhood, when defendants knew or should have known of its dangerous condition and its attractiveness to small boys; (2) in failing to take steps to drain said pond or to maintain proper drainage in said neighborhood of Independent Avenue and White Avenue so that said water would not accumulate so as to form said pond, and (3) in failing to place guards or warnings or take other steps to prevent small boys from attempting to swim in said pond."

Plaintiffs base their claim for damages on the attractive nuisance doctrine. This doctrine is founded on the English case of Lynch v. Nurdin, 1 Q. B. 29, 41 E. C. L. 422, 113 Reprint 1041, Sec. 45 C. J. 758 et seq. There plaintiff, a six year old boy, was injured while playing on a cart, to which a horse was hitched, which had been left unguarded in the street by defendant's servant. The leading case in the U. S. is that of Sioux City R. Co. v. Stout, 17 Wall. (U. S.) 657, 21 L. Ed 745. Plaintiff in that case was a six year old boy who was injured while playing on defendant's unguarded turntable. Because that was a turntable case the theory on which liability in such cases is predicated became known in this country as the "Turntable Doctrine;" but the turntable cases go far beyond the legal principles

involved in the case of Lynch v. Nurdin, *supra*. Buddy v. R. R. 276 Mo. 276.

The "Turntable" and Attractive Nuisance" doctrines are the same on principle. [Dominion Construction Company v. Williamson, 217 Ky. 62, l. c. 65; 288 S. W. 1085; Buddy v. R. R., 276 Mo. 284.] The doctrine is now more familiarly known as that of "Attractive Nuisance." [Louisville & Nashville R. R. Company v. Hutton, 220 Ky. 277, l. c. 281 295 S. W. 175; 36 A. L. R. 38; 45 C. J. 758.]

Plaintiffs base their right of recovery on the law as declared in Davoren v. Kansas City, 308 Mo. 513, 273 S. W. 401. They contend that the facts in the case at bar are so nearly like those in the Davoren case that the question of their right of recovery was wholly one for the jury under proper instructions.

In the Davoren case defendant had raised the grade of 21st Street between Bales Avenue and Askew Street so as to create a barrier, like a dam, to the natural drainage of water through a ravine which traversed 21st Street at that point. No provision was made for drainage through or under the fill. A body of water, some 250 feet by 200 feet in area, and 15 feet deep, was caused to form. It was located on privately owned property and had existed for some 19 years prior to the drowning of plaintiffs' twin sons, aged 6 years and 7 months. It was the custom for children to swim in the lake during the summer months and to skate on the ice formed thereon during the winter. Defendant had long known of this practice and usage and had taken no steps to prevent or discourage same. On an afternoon when plaintiffs' sons were skating and playing on the ice of said lake the ice broke and precipitated them into the water, where they were drowned. A divided court, four to three, *en banc*, sustained a judgment based on the negligence of the city in creating and permitting a pond to exist in a populated section of the city, with knowledge that same was used by children as a resort without taking measures to prevent danger to children so using it.

Defendant contends that the Davoren case is "bad law." Defendant's views appear to be shared by the author of the annotation appearing in connection with the opinion as reported in 40 A. L. R. 488, et seq, 36 A. L. R. 224. The author there states that the decision is not in harmony with the weight of authority on the subject; that it is without supporting precedent; and he challenges and criticises the statement, contained in the Davoren opinion, to the effect that the facts therein are similar to those in Capp v. St. Louis, 251 Mo. 345, 46 L. R. A. (U. S.) 731, 158 S. W. 616, (Woodson, J., is the author of the opinions in both the Davoren and Capp cases).

In the Davoren case the court held that, by its own act, the city had created the pond; that it had permitted it to exist in its then condition for a long period of time with full knowledge of its use by children; that it constituted a nuisance; and that it was attractive

and dangerous to children. While the court declared that the case was not brought, tried, or decided on the theory of the turntable cases, we think that it was referring to the doctrine of the turntable cases as it had previously been construed and defined. The case was based on the theory that the pond constituted an attractive nuisance; but the court, in allowing the judgment, broadened the theory under which liability attached in that kind of case, as the same had previously been construed, and made it applicable to situations and conditions to which it had not therefore been applicable. See dissenting opinion of GRAVES, C. J. In so doing the court, in effect, overruled its previous decisions and abandoned its previously avowed opposition to a further extension of the doctrine. [Kelly v. Benas, 217 Mo. 1, l. c. 11, 13, 14; Buddy v. R. R. 276 Mo. 276, l. c. 285.]

The Davoren case is controlling in the case at bar on all points presented and decided. 7 R. C. L. 1003; L. & N. R. R. Company v. Hutton, *supra*. Regarding all questions presented herein and not ruled in the Davoren case, or there ruled on facts materially different from those obtaining here the Davoren decision is not controlling in this case. Defendant here contends that it is not liable because deceased was guilty of contributory negligence as a matter of law. No such contention was presented or discussed in the Davoren case.

In Louisville & Nashville R. R. Company v. Hutton (220 Ky 277) *supra*, a case brought under the attractive nuisance theory, the Supreme Court of Kentucky said:

"To begin with the doctrine is never applicable except where the plaintiff is a trespasser. If he sustains his injuries while at a place where he has a right to be, then the defendant is presumptively liable therefor if negligence, regardless of whether the plaintiff is an infant or an adult. The reason why the latter might not recover the 'attractive nuisance' doctrine, when an infant might do so is because the adult, like the infant, would be a trespasser, but on account of his matured mind and discretion he would be responsible for his own trespassing, while the infant, if of tender years and consequent indiscretion, would not be responsible for his trespasses. So that, the doctrine is founded upon the theory that if one maintains an attractive and a dangerous contrivance on his premises and it is exposed to contact by *indiscreet* children of *tender* years, and he has knowledge that they are in the habit of playing upon or around the premises where such contrivance is maintained, it then becomes his duty founded on humane considerations to exercise ordinary care for the protection of such indiscreet and youthful trespassers, who are attracted to and brought in contact with the danger and their lack of appreciation of it on account of their youth and consequent indiscretion, although they are trespassers. The above general principles are so well founded and have been repeated by the courts so often that we deem it unnecessary to refer to or cite the cases. What we have said is sufficient

to clearly point out that without the youthful indiscretion on the part of the infant there would be no duty on the part of the maintainer of the contrivance to render it reasonably safe for trespassers. But when the injured person arrives at such an age so as to remove him, either presumptively or actually, from the class of youthful and indiscreet persons, he clearly would not be entitled to the benefit of the doctrine any more so than a normal adult, unless he shows that although he was of sufficient age to remove him from the protection of the rule, yet on account of his undeveloped mental condition he was entitled to be classified with those for whose benefit the doctrine was created.''

In that case the court held that under the doctrine of attractive nuisance children under 7 years of age are conclusively presumed to be not guilty of contributory negligence; children from 7 to 14 years of age are also presumed to be not guilty but the presumption is rebuttable and it may be a question for the jury if evidence is offered thereon; and children over 14 and under 21 are presumed to be guilty of contributory negligence but said presumption may be rebutted by evidence in behalf of plaintiff tending to prove that, by reason of his mental undevelopment he is, in fact, entitled to the benefit of the doctrine. From authorities there discussed it appears that unless evidence tending to overcome the presumption of contributory negligence is offered a child more than 14 years of age should not be entitled to recover under the attractive nuisance theory.

However, it has been held by our Supreme Court that an 8 year old boy is only required to exercise care commensurate with the intelligence, capacity and experience he is shown to possess. The rule in Missouri is that the mental capacity of a minor, notwithstanding his age, must be considered in determining whether or not he is guilty of contributory negligence in a given case. [Jackson v. Butler, 249 Mo. 342, l. c. 375.] The question is usually one for the jury. Nevertheless, in an opinion by Judge Lamm, McGee v. Wabash R. R. Company, 214 Mo. 530, l. c. 546, 114 S. W. 36, l. c. 37, the Supreme Court held that a 13 year old boy was guilty of contributory negligence as a matter of law in going on a railroad track in front of an approaching train. The court there said: ''If the facts are few and simple, devoid of confusion and complications, and if the danger to be avoided is so apparent as to be within the easy comprehension of a boy thirteen years of age, if that boy is shown to be of bright intelligence and of a judgment training him to caution and care in the matter in hand—we say all these things being admitted, then there is no reason why the judge on the bench may not as a matter of law under the facts of the given case declare there could be no two opinions among reasonable men about the negligence of such a boy measured by the standard of an ordinarily prudent boy.'' This language and judgment was approved in Jackson v. Butler, *supra*, l. c. 375. In Turner v. City of

Moberly, 224 Mo. App. 683, 26 S. W. (2d) 997, this court held that a boy past 14 years of age who swung out over a lake in a city park on a rope attached to a tree was guilty of contributory negligence as a matter of law and that no recovery could be had under the attractive nuisance doctrine. The author of that opinion, BARNETT, C., quoted a portion of Judge LAMM's opinion in McGee v. Railroad, *supra*, to-wit: ''He knows as well as an adult that fire will burn, a wasp sting, water drown or a locomotive kill, or cold freeze, and may be held to know as a matter of law.'' It is there pointed out that in cases where recovery has been allowed for drowning in ponds the courts of this state have not excluded contributory negligence as a complete defense; and from the case there cited,'including the Davoran case, it appears that in a majority where recovery was allowed in that class of cases, the children were under 7 years of age.

The evidence in this case is undisputed and to the effect that deceased was more than 14 years of age, was a normal, healthy boy, bright and intelligent, was making average grades in school work, and had been warned by his father of the danger of swimming anywhere unless his father was present. There were no latent or concealed dangers. The danger of drowning in water was known by him as well as if he had been adult. Such danger was plain and obvious.

Logically, it would seem that, as to an adult, in cases like this, defendant would owe no duty for the reason that it was guilty of no negligence in maintaining a pond free from concealed dangers. If that be correct, then it would not be guilty of negligence in regard to a minor who is as fully aware of the obvious and plain danger of drowning when he goes into water as would be an adult. Therefore, it does not appear to be quite logical to say that deceased, in this case, was guilty of contributory negligence. If he was guilty of contributory negligence then, perforce, defendant must have been negligent as to him. A finding of contributory negligence on the part of deceased necessarily requires that we concede that there was negligence on the part of defendant.

Regardless of the logic involved, however, the decisions in Missouri absolve defendant from liability in a case like this; and they place such absolution on the grounds of contributory negligence. Accordingly, we hold that deceased was guilty of contributory negligence as a matter of law in having voluntarily dived into Gooseneck Pond to swim, which act caused his death.

Defendant's offered demurrer should have been sustained. The judgment should be reversed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of Sperry, C., is adopted as the opinion of the court. The judgment is reversed. All concur.