Inez HOSFORD, a minor, by Helen Hosford, her natural guardian and next friend, Plaintiff-Appellant,

v.

Larry CLARK, a minor, by Harold D. Jones, guardian ad litem, Defendant-Respondent.

No. 7999.

Springfield Court of Appeals.

Missouri.

July 24, 1962.

Motions for Rehearing or to Transfer Overruled Aug. 22, 1962.

Ward & Reeves, Caruthersville, for plaintiff-appellant.

Bock & Jones, New Madrid, for defendant-respondent.

STONE, Judge.

Juvenile jollity and giddy gaiety were, in the twinkling of an eye, translated and transformed into mischievous misadventure and miserable misfortune when, on a country road near Portageville, Missouri, about 11:00 P.M. on Saturday, September 19, 1959, plaintiff, Inez Hosford, then fourteen years of age, fell or was thrown from the *right front fender* of a 1957 Oldsmobile sedan being driven by defendant, Larry Clark, then seventeen years of age. Damages were denied by a nine-man jury verdict for defendant; and, on this appeal from the judgment entered on the verdict, the only points presented by plaintiff are that the trial court erred in giving defendant's instructions 6 and 7. Defendant answers that any error in said

instructions was cured by plaintiff's instructions 4 and 8, and further that, in any event, plaintiff was guilty of contributory negligence as a matter of law and thus did not make a submissible case. If the latter contention be well-taken, defendant's motion for a directed verdict at the close of the evidence should have been sustained and instructions given at his request (even though erroneous) could not have prejudiced plaintiff. Brooks v. Stewart, Mo., 335 S.W.2d 104, 105(1), 81 A.L.R.2d 508; Seeley v. Hutchison, Mo., 315 S.W.2d 821, 824(1); Burks v. Buckmiller, Mo.App., 349 S.W.2d 409, 411(1). Accordingly, we first consider whether plaintiff was contributorily negligent as a matter of law.

Early on the evening of the accident, plaintiff Inez, with thirteen-year old Linda Young and fourteen-year old Sandra Hall, had gone downtown in Portageville to a carnival operating in connection with the annual "Soybean Festival." Having done the carnival attractions, this trio of girls, afoot on Main Street about 9:30 P.M., were sighted by a trio of teen-age boys in the Oldsmobile. We observe parenthetically that the automobile was owned by one Orbin McHugh, defendant Larry's "cousin by marriage," who had permitted his fifteen-year old son, Michael David (Mike) McHugh, although unlicensed to operate a motor vehicle, to take the family automobile that evening and to drive it from the McHugh farm home to the farm home of defendant Larry's family about one mile distant with the understanding that Larry would drive from that point. So it was that on Main Street in Portageville later that evening Larry was at the wheel of the McHugh automobile with fifteen-year old Mike McHugh and eighteen-year old Vernon Stills, a neighbor youth, also in the automobile. Larry asked the girls if they "wanted to go riding" and, having demurely hesitated for a moment, they accepted his invitation and got into the back seat of the Oldsmobile.

After driving in Portageville for some twenty or thirty minutes, defendant Larry left town on an unpaved country road which afforded a more appropriate setting for the protracted series of zany antics inspired by the occasion. Larry opened the cross fire of youthful buffoonery by switching the ignition off and on until the Oldsmobile stopped and then by pretending that "we are out of gas." Thirteen-year old Linda retaliated in kind by reaching over the front seat and grabbing the keys. Then all three girls jumped from the automobile, ran down the road ahead, and threw the keys back and forth from one to another. Two of the boys, defendant Larry and fifteen-year old Mike, immediately joined in the frivolous frolic; and, as plaintiff Inez described the action, "we started scuffling with the key" or, as Mike graphically portrayed it, the boys "took in after them (the girls) and we scrambled around there a little bit." When he regained possession of the keys, Larry told Linda that she had lost one of the keys, although, as Mike explained, "we really hadn't lost one—Larry just told her that." Leaving Linda to hunt for the "missing" key, the others returned to the automobile, plaintiff Inez and Sandra got into the back seat again, and defendant Larry started the motor, drove down the road to Linda, and terminated her search for the nonexistent key.

In the exhilaration and the exuberance of the moment, Linda climbed on the left front fender and sat sideways with her legs hanging over the side of the fender, holding (so plaintiff Inez thought) to "the windshield wipers or something." Not to be outdone by Linda, the other two girls left the back seat of the automobile, Sandra assumed a sitting position "in the middle of the hood" with her back to the windshield and her legs and feet on the hood, and plaintiff seated herself on the front of the right front fender, facing forward with her feet on the front bumper, and holding with her left hand to an emblem or ornament on the hood. Admitting that he knew that "it was dangerous for these girls to be riding on the front fender (sic) and hood,"

defendant Larry testified that he had "asked them (the girls) not to ride up there"; and in this he was supported by Mike who quoted Larry as having told the girls, "would you please get off the front because my dad said not to let anyone ride on the front—it is dangerous." But, both plaintiff and Linda testified that they had heard no such request or warning, and the evidence reasonably would have permitted a finding that none was given.

In any event, Larry started forward with the girls draped over the front of the Oldsmobile in the described positions. Proceeding (so he said) at a speed never in excess of fifteen miles per hour, he drove without incident "approximately a quarter of a mile" in the course of which he rounded a sharp curve to his left. Approaching a second curve described by him as "a corner," Larry slackened speed to about five miles per hour; and, as he completed this curve, he spotted a side road where he could turn around. Intending so to do, Larry quickly applied the brakes, the automobile immediately stopped, and plaintiff unceremoniously fell or was thrown from the right front fender. Larry frankly stated upon trial that he had not driven previously either his cousin's Oldsmobile involved in this occurrence or, for that matter, any other automobile with power brakes, and that the power brakes on the Oldsmobile had "grabbed hold quicker" than he had anticipated. The medical tes-

timony was omitted from the transcript as not relevant to any issue upon appeal, but the reader may be interested to know that the record reflects relatively mild injuries and thus only near-tragic rather than calamitous consequences.

In support of his contention that plaintiff was contributorily negligent as a matter of law, defendant cites three cases [Smith v. Ozark Water Mills Co., 215 Mo. App. 129, 238 S.W. 573; Sanford v. Gideon-Anderson Co., Mo.App., 31 S.W.2d 580; Blaser v. Coleman, 358 Mo. 157, 213 S.W. 2d 420], all of which involved *adult* riders on motor vehicles but only one of which [Smith, supra] held the rider guilty of contributory negligence as a matter of law. It is true that, as the adjudicated cases[1] demonstrate, *minors* in the age range of plaintiff and her girl companions may be, in some circumstances, contributorily negligent as a matter of law. However, it is clear that a child is to be judged as such and not as an adult,[2] "'(f)or no court can hold that childhood and manhood are bound to observe the same degree of diligence.'" Jackson v. Butler, 249 Mo. 342, 370, 155 S.W. 1071, 1079(16). And, the authorities leave no room for doubt but that the care and caution required of a minor, who is of sufficient age to be chargeable with contributory negligence, is that ordinarily exercised by others of the same age, experience and capacity under the same or similar circumstances.[3]

1. Boesel v. Wells Fargo & Co., 260 Mo. 463, 169 S.W. 110, 113–114(3); McGee v. Wabash R. Co., 214 Mo. 530, 114 S.W. 33, 37(15); Spillane v. Missouri Pac. Ry. Co., 135 Mo. 414, 37 S.W. 198, 201; McFarland v. Grau, Mo.App., 305 S.W.2d 91, 101–103(4, 5); Van Alst v. Kansas City, 239 Mo.App. 346, 186 S.W. 2d 762, 766(5); Turner v. City of Moberly, 224 Mo.App. 683, 26 S.W.2d 997, 999(7); Battles v. United Rys. Co. of St. Louis, 178 Mo.App. 596, 161 S.W. 614, 623–624(14, 15); Henry v. Missouri Pac. Ry. Co., 141 Mo.App. 351, 125 S.W. 794(2); Stegmann v. Gerber, 146 Mo.App. 104, 123 S.W. 1041, 1045(3).

2. Moeller v. United Rys. Co., 242 Mo. 721,

147 S.W. 1009, 1011(4); Czernicke v. Ehrlich, 212 Mo. 386, 111 S.W. 14, 17; Anderson v. Union Term. R. Co., 161 Mo. 411, 424, 61 S.W. 874, 878; Doran v. Kansas City, Mo.App., 237 S.W.2d 907, 912; Erxleben v. Kaster, Mo.App., 21 S.W.2d 195, 198(12); Smiley v. Jessup, Mo.App., 282 S.W. 110, 112(6); Saller v. Friedman Bros. Shoe Co., 130 Mo. App. 712, 109 S.W. 794, 797.

3. Warren v. Kansas City, Mo., 258 S.W.2d 681, 683(3); Beebe v. Kansas City, 327 Mo. 67, 34 S.W.2d 57, 58(5); Jackson v. Butler, 249 Mo. 342, 155 S.W. 1071, 1079(16); Spillane v. Missouri Pac. Ry. Co., supra, 37 S.W. loc. cit. 201(2); Hammontree v. Edison Bros. Stores, Mo.

■■ It has been recorded, as a general principle, that: "'A voluntary exposure to known danger is an essential element of contributory negligence. Moreover, it is the appreciation of, or the opportunity to appreciate, the peril in an instrumentality or condition, rather than a knowledge of its physical characteristics, that bars a plaintiff of recovery for negligence.'" Bartlett v. Taylor, 351 Mo. 1060, 1071, 174 S.W.2d 844, 851(10, 11); 38 Am.Jur., Negligence, § 188, p. 864. A fortiori, in actions by minor plaintiffs, it becomes appropriate and necessary to bear in mind that: "Knowledge and appreciation of the danger and risk of injury, actual or imputed, is essential in order that a child may be guilty of contributory negligence. Mere knowledge that injury might result, without appreciation of the risk of injury to which his conduct exposed him, is not sufficient." Turner v. City of Moberly, 224 Mo.App. 683, 685, 26 S.W.2d 997, 998; Wilson v. White, Mo.App., 272 S.W.2d 1, 6–7(12); United States v. Stoppelmann, 8 Cir., 266 F.2d 13, 19. In so stating, courts but recognize that which is common knowledge, i. e., that thoughtless conduct, impulsive action and immature judgment are concomitants of youth, and that, although "a boy (or a girl) may have all the knowledge of an adult respecting the dangers which will attend a particular act * * * at the same time he (or she) may not have the prudence, thoughtfulness, and discretion to avoid them which are possessed by the ordinarily prudent adult person." Burger v. Missouri Pac. R. Co., 112 Mo. 238, 249, 20 S.W. 439, 441; Holmes v. Missouri Pac. Ry. Co., 190 Mo. 98, 107, 88 S.W. 623, 625.

Since "(t)here is no fixed rule of law by which to gauge, or scale by which to nicely weigh, the acts of a minor to determine if he (or she) is guilty of contributory negligence" [Jackson v. Butler, supra, 249 Mo. loc. cit. 369, 155 S.W. loc. cit. 1079], and since, in each instance, not only the age of the minor but also "the peculiar circumstances of the particular case, the knowledge and experience of the child in reference to those circumstances, and his capacity to appreciate the danger" must be taken into consideration [Moeller v. United Rys. Co., 242 Mo. 721, 729, 147 S.W. 1009, 1012 (6)], whether a minor plaintiff has been guilty of contributory negligence, i. e., whether the minor both knew and appreciated the danger and the risk of injury, is usually for the triers of the facts. For that matter, judicial declaration that any plaintiff has been contributorily negligent as a matter of law is permissible and proper only where it may be said upon the whole evidence and all inferences deducible therefrom, when viewed in the light most favorable to plaintiff, that the only reasonable conclusion is that plaintiff was guilty of negligence proximately causing his injury.[4]

Exemplifying the inexhaustible, incredible capacity of the human race to concoct, conceive and create bizarre situations presenting unnecessary and inordinate danger to life and limb, some weird factual concatenations involving riders *on* (as distinguished from *in*) motor vehicles have come to our appellate courts. E. g., Smith v. Ozark Water Mills Co., supra, in which a 26-year old man, standing at night on the *left running board* of an automobile rounding a sharp curve on the wrong side of an unpaved road and holding a possum in his left hand and the strap on the back of the

App., 270 S.W.2d 117, 125(11); Lottes v. Pessina, Mo.App., 174 S.W.2d 893, 899(12); Dorlac v. Bueneman, Mo.App., 129 S.W.2d 108, 110(2); annotation 174 A.L.R. 1080, 1084, 1134–1145; annotation 107 A.L.R. 4.

4. Dye v. Geier, Mo., 345 S.W.2d 83, 87 (3); Binion v. Armentrout, Mo., 333

S.W.2d 87, 91(4); Kickham v. Carter, Mo., 314 S.W.2d 902, 908(8); Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498, 500(4); Anderson v. Welty, Mo.App., 334 S.W.2d 132, 138(9); Carpenter v. Kessner, Mo.App., 330 S.W.2d 270, 271(1); Hathaway v. Evans, Mo. App., 235 S.W.2d 407, 412(13).

front seat in his right hand, was thrown from the running board by an abrupt swerve to sudden death under the wheels of an approaching unlighted truck; Sanford v. Gideon-Anderson Co., supra, in which an adult, standing by day on the *right running board* of a truck traveling 35 to 40 miles per hour on a graveled road, was thrown to his death when the truck skidded into a ditch and overturned; Hathaway v. Evans, Mo.App., 235 S.W.2d 407, in which an adult plaintiff, kneeling in freezing weather on *top of a load of loose hay* with snow whipping into his face and holding to the handles of two pitchforks driven into the hay, was upended and cast onto the frozen roadway by a taut telephone wire; and Ward v. Penn Mutual Life Ins. Co., Mo.App., 352 S.W.2d 413, in which a 30-year old telephone lineman, climaxing a beer-drinking bout by riding "spread-eagled" on *top of a station wagon,* fell or was thrown to his death on a city street. But neither counsel nor the court has discovered any "fender case" among the reported Missouri decisions.

However, we have found a number of cases in other jurisdictions falling into this factual category. Where the fender riders have been *adults,* the cases appealing to us as better-reasoned and sounder in principle hold such riders contributorily negligent as a matter of law,[5] although other cases indicate that *in some circumstances* the contributory negligence of even *adult* fender riders properly may be for the jury.[6] But, where the fender riders have been *minors* within the age range of plaintiff and her companions, all of the courts of our sister states, to whom this question

has been put, have been of one mind in declaring the issue of contributory negligence to be for determination by the triers of the facts.[7]

In the case before us, we know very little about plaintiff Inez other than that she was fourteen years of age at the time of accident. The record does not reveal the extent of her formal education (or, for that matter, whether she had gone to school), the scope of her experience as a rider either *in* or *on* motor vehicles (presumably, at her age, she had had no experience as a driver), or the measure of her physical strength or her mental development. Certainly, nothing suggests precocity of intellect, judgment, or capacity to comprehend danger and appreciate the risk of injury therefrom. We have not overlooked the fact that, as defendant's counsel point out, plaintiff told her girl companions that "you better hang on or you'll fall"; but obviously this may not be said to have indicated comprehension of danger or appreciation of the risk of injury *at a time when she thereafter could have avoided exposure thereto,* for this statement was made while the Oldsmobile was in motion and she "fell off right after that." Believing that reasonable minds well might disagree as to whether plaintiff fully comprehended the danger and appreciated the risk of injury inherent in her action and conduct, we are constrained to conclude that the issue of contributory negligence was for the jury and that therefore defendant's motion for a directed verdict properly was overruled.

■ This brings us to the complaints about defendant's instructions 6 and 7.

5. Hinch v. Elliott, 119 Conn. 207, 175 A. 684; Wheeler v. Buerkle, 14 Cal.App.2d 368, 58 P.2d 230; Granfield v. Herlihy, 322 Mass. 313, 77 N.E.2d 225; Central Transfer & Storage Co. v. Frost, Ohio App., 36 N.E.2d 494, 498-499.

6. Johnson v. Pedicord, 105 Ind.App. 71, 10 N.E.2d 295; Smith v. American Oil Co., 77 Ga.App. 463, 49 S.E.2d 90; Collier v. Young, D.C.Mun.App., 94 A.2d 645.

7. Byers v. Gunn, Fla., 81 So.2d 723; Lassiter v. Poss, 85 Ga.App. 785, 70 S.E. 2d 411; Bordelon v. Great American Indemnity Co., La.App., 124 So.2d 634, 637-638(1, 2) ; Hammett v. Fleming, Tex.Civ.App., 324 S.W.2d 70, 74(7, 8), error refused n. r. e.; Tenney v. Enkeball, 62 Ariz. 416, 158 P.2d 519; Bruno v. Grande, 31 Ariz. 206, 251 P. 550; Belk v. Rosamond, 213 Miss. 633, 57 So. 2d 461; Jewel Tea Co. v. Sklivis, 231 Ala. 590, 165 So. 824.

*Instruction 6* opened with the statement that plaintiff "was bound to exercise *ordinary care* for her own safety at the time and place mentioned in the evidence, *that is, such care as an ordinary prudent person would exercise under the same or similar circumstances.*" (All emphasis herein is ours.) This instruction then told the jurors that, "if you find and believe from the evidence that plaintiff, Inez Hosford, elected to ride on the right front fender of the automobile * * * and that there was a seat available to her inside said automobile, and if you find that in so doing, plaintiff * * * failed to exercise *ordinary care* for her own safety, and * * * that such act * * * directly contributed to her injuries, if any, *then you should find plaintiff * * * guilty of contributory negligence and she cannot recover herein* * * * and this is so even though you find that the defendant was negligent under instructions no. 1 or 2." *Instruction 7,* repeating and emphasizing the definition of ordinary care in instruction 6, told the jury that "by the term 'ordinary care' *as used in these instructions* is meant that degree of care and caution which an ordinary prudent person would exercise under the same or similar circumstances." Thus, instruction 6 unqualifiedly obligated plaintiff Inez to exercise *ordinary care,* and thereby imposed upon her the duty to exercise *that degree of care "which an ordinary prudent person would exercise under the same or similar circumstances,"* since both instructions 6 and 7 defined ordinary care in that language. This clearly was erroneous because, as we have found, the care required of a minor of plaintiff's age is that ordinarily exercised by others of the same age, experience and capacity under the same or similar circumstances. See again the authorities listed marginally in note 3.

■ True, the degree of care required of plaintiff was, in instructions 4 and 8 given at *her* request, stated in substantially correct terms. But, this does not bring defendant within the curative cloak of the oft-invoked principle that all instruc-

tions should be read together and considered as a whole and if, when so read and considered, they are harmonious, clear and complete, reversible error cannot be found because one of them, considered singly, may be defective. Faught v. Washam, Mo., 329 S.W.2d 588, 597(10); Johnson v. Flex-O-Lite Mfg. Corp., Mo., 314 S.W.2d 75, 81(8); Layton v. Palmer, Mo., 309 S.W.2d 561, 570(20), 66 A.L.R.2d 1242. In Warren v. Kansas City, Mo., 258 S.W.2d 681 (upon which instant defendant primarily relies), *defendant's* criticized instruction on contributory negligence *"did not in point of fact purport to set forth the degree of care to be exercised" by plaintiff* [258 S.W.2d loc. cit.·683] and, with *plaintiff's* given instructions plainly stating the care required of him, "omitting reference to the care required of a minor" in defendant's instruction could not have been erroneous or prejudicial when all of the instructions were read and considered together. [258 S.W.2d loc. cit. 684(4)] And, again in Hustad v. Cooney, Mo., 308 S.W.2d 647 (also cited by instant defendant), *defendant's censured instruction did not "either expressly or impliedly, purport to advise the jury as to the degree of care to be exercised" by plaintiff* [308 S.W.2d loc. cit. 649], that matter having been covered fully and accurately in plaintiff's given instruction. But, the holdings in Warren and Hustad, supra, do not reach or control the case at bar, for the vice of instant defendant's instructions 6 and 7 is not one of harmless omission or negative nondirection but is rather one of positive misdefinition and affirmative misdirection which leaves the instructions, when considered as a whole, in a state of blatant discord and utter confusion.

The degree of care implicitly imposed upon plaintiff Inez by defendant's instructions 6 and 7 was erroneous and in irreconcilable conflict with the degree of care stated in substantially correct terms in plaintiff's instructions 4 and 8. With plaintiff's and defendant's instructions having submitted different standards of care, we

cannot say that the jury did not follow defendant's erroneous submission. Dixon v. General Grocery Co., Mo., 293 S.W.2d 415, 421(8); Anderson v. Prugh, 364 Mo. 557, 264 S.W.2d 358, 365(14); Burlingame v. Landis, 362 Mo. 523, 242 S.W.2d 578, 581 (4). See also Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124, 131(11). For the giving of defendant's instructions 6 and 7, the judgment must be set aside and the cause remanded for retrial. See particularly Bussey v. Don, Mo., 259 S.W. 791, 793(4). Consult also Goodwin v. Eugas, 290 Mo. 673, 236 S.W. 50, 53(2), and Dorlac v. Bueneman, Mo.App., 129 S.W.2d 108.

It is so ordered.

RUARK, P. J., and McDOWELL, J., concur.