******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BISHOP, J., concurring in part and dissenting in part. At the outset, I agree with the majority's well articulated history of the procedural and factual history of this challenging appeal, and I agree, as well, with the majority's conclusion that, given the current posture of this matter, the trial court correctly declined to issue a writ of mandamus. I respectfully disagree, however, with the majority's rejection of the alternative claim for relief requested by the plaintiff, Aldin Associates Limited Partnership, asking this court to engraft a burden shifting scheme on the statute in question, General Statutes § 22a-449c, in order to effectuate its purpose. I, therefore, would reverse the judgment of the trial court and remand the matter for a new trial in which the burden is placed on the defendants, the state of Connecticut and Katie Dykes, the Commissioner of Energy and Environmental Protection (commissioner), to prove that there are no other claims being actively pursued that, pursuant to the statutory scheme, would preclude the plaintiff's recovery.

In declining to adopt such a scheme, the majority noted initially that "the plaintiff has not pointed this court to any authority or legislative history of the statutory scheme that would support its position of imposing a burden shifting requirement onto the statutes." The majority appears to conclude that such an action would be beyond the ken of an appellate tribunal. I agree that it is generally improper for an appellate court to insert substantive statutory language or interpret a statute in such a manner that would alter its meaning. The burden shifting approach requested by the plaintiff, however, does not present such a scenario.

What the plaintiff in this matter has asked the court to do is neither unique nor invasive of the legislative prerogative. To the contrary, our judiciary historically has engrafted burden shifting requirements on statutes

that are otherwise silent in that regard in order to make the statutes under examination more practical, workable, and consistent with public policy. Perhaps primary among such cases is the United States Supreme Court opinion in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), in which the court imposed a burden shifting scheme on the civil rights statute relating to employment discrimination, namely, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. In *McDonnell Douglas Corp.*, the court set forth a burden shifting scheme on any employment related claims of discrimination requiring a claimant to first prove that he or she is a member of a protected class and that the claimant has suffered from an adverse employment action by the defendant. See *McDonnell Douglas Corp.* v. *Green*, supra, 802. Once that is proven, the defendant is then obligated to demonstrate that the action was taken for a nondiscriminatory purpose. Id. The burden then shifts back to the claimant to show that the defendant's claim is a pretext put forward in order to defeat the claim of discrimination. Id., 804–805.

This burden shifting scheme adopted by the United States Supreme Court has been applied by our Supreme Court without any concern for invading the province of the legislative body, be it on separation of powers concerns or any other basis. For example, in *Craine* v. *Trinity College*, 259 Conn. 625, 791 A.2d 518 (2002), our Supreme Court opined: "When a plaintiff claims disparate treatment under a facially neutral employment policy, this court employs the burden-shifting analysis set out by the United States Supreme Court in *McDonnell Douglas Corp.* . . ." Id., 636. I find it particularly noteworthy that, in *Craine*, our Supreme Court followed the lead of the United States Supreme Court in a discrimination suit brought not only under federal

civil rights legislation, 29 U.S.C. § 623 (age discrimination) and 42 U.S.C. § 2000e-2 (a) (sex discrimination), but also under an analogous Connecticut statute, General Statutes § 46a-60, prohibiting certain discriminatory practices. See id., 627.

While this burden shifting scheme is applied in the employment discrimination context in Connecticut, it is not limited to that subject matter. For example, in *Ireland* v. *Ireland*, 246 Conn. 413, 419, 717 A.2d 676 (1998), our Supreme Court imposed a burden shifting scheme upon the requirements of General Statutes § 46b-56, which authorizes the court to make custody decisions in family matters. According to the burden shifting scheme devised by the Supreme Court, a custodial parent who wishes to relocate with a child from Connecticut has the initial burden of showing that the intended move is for a legitimate purpose and the intended move is reasonable in light of that purpose. Id., 425. Once that is established, the burden then shifts to the noncustodial parent to demonstrate that the proposed move is not in the child's best interest. Id., 426. A close review of *Ireland* indicates that the court's rationale for imposing such a burden shifting scheme was to render the custody statute at hand both workable and reasonable in promoting a child's best interest.

In the area of child protection, our Supreme Court, in the matter of *In re Zakai F.*, 336 Conn. 272, 276, 255 A.3d 767 (2020), engrafted a burden shifting scheme on General Statutes § 45a-611, pertaining to guardianship of minors. The court explained that "[t]he presumption we have adopted [as a matter of first impression] allows a parent to file a motion for reinstatement of guardianship, and, as long as the parent can show that the reasons that led to the transfer of guardianship have been ameliorated, the parent is entitled to a rebuttable presumption that reinstatement is in the best interests of the child." Id., 289. In that case, the court noted that

neither § 45a-611, Practice Book § 35a-20 (d), or previous decisions had addressed whether a parent was entitled to a constitutional presumption that reinstatement was in the best interest of a child. Id., 285. Nevertheless, it concluded further that, pursuant to that presumption, the burden shifted to the nonparent to rebut the best interest presumption by clear and convincing evidence. Id., 289, 304.

Additionally, our Supreme Court in *State* v. *Swebilius*, 325 Conn. 793, 801, 807–808, 159 A.3d 1099 (2017), imposed a burden shifting scheme on General Statutes (Rev. to 2007) § 54-193 (b) in a situation in which a criminal defendant has alleged that an arrest warrant was not served timely upon him. The court opined: "Specifically, we hold that, once the defendant has demonstrated his availability for arrest, he has done all that is required to carry his burden; the burden then shifts to the state to demonstrate that any period of delay in executing the warrant was not unreasonable." Id., 804.

Respectfully, I believe this nonexhaustive elucidation of examples is adequate evidence that our Supreme Court has not hesitated to engraft a burden shifting scheme on a particular statute, or statutory scheme, in order to render the provisions of the statute under review both practical and reasonable. See *Ireland* v. *Ireland,* supra, 246 Conn. 420–21 (courts have common-law adjudicatory authority to create burden shifting scheme). Such, I believe, is the situation we face.

"Lord Coke begins his First Institute of the Laws of England with the following: Reason is the life of the law, nay, the common law itself is nothing else but reason." (Internal quotation marks omitted.) *Prowant* v. *Kings-X, Inc.*, 184 Kan. 413, 417, 337 P.2d 1021 (Jackson, J., dissenting), rev'd on rehearing, 185 Kan. 602, 347 P.2d 254 (1959); see also *Peck* v. *Conder*, 540 S.W.2d 10, 12 (Ky. 1976) (Jones, J., dissenting) (same). In an

often cited treatise, The Nature of the Judicial Process, Justice Benjamin N. Cardozo famously stated: "The final cause of law is the welfare of society. The rule that misses its aim cannot permanently justify its existence. . . . [W]hen [judges] are called upon to say how far existing rules are to be extended or restricted, they must let the welfare of society fix the path, its direction and its distance." B. Cardozo, The Nature of the Judicial Process (1921), pp. 66–67; see also *People* v. *Hickman*, 12 Ill. App. 3d 412, 417, 297 N.E.2d 582 (1973), aff'd, 59 Ill. 2d 89, 319 N.E.2d 511 (1974), cert. denied, 421 U.S. 913, 95 S. Ct. 1571, 43 L. Ed. 2d 779 (1975); *Commonwealth* v. *Redline*, 391 Pa. 486, 533–34, 137 A.2d 472 (1958) (Bell, J., dissenting).

I believe Cardozo's admonition is appropriate to the case before us. Here, the plaintiff has proven that it is entitled to payment of its claims under the underground storage tank program. For sure, its applications have been approved. Additionally, it is undisputed that the program, although now discontinued, has funds remaining to satisfy the plaintiff's claims. But, the majority holds the plaintiff is not entitled to require the state to pay its claims in spite of the applicable statute's[1] direction that approved claims should be paid, simply because the state has indicated that other claims have been made that have a priority over the plaintiff's. As a consequence, the impact of the majority's opinion is that the state need not pay the plaintiff's valid claims and the parties are at an impasse.

In short, the consequence of the majority's opinion and the state's position is the anomalous result that the

---

[1] The statute in question specifically provides that "[t]he *program shall provide money for reimbursement or payment pursuant to this section* and sections 22a-449d to 22a-449i, inclusive, 22a-449p, 22a-449r and 22a-449t, within available appropriations, *to responsible parties* . . . for costs, expenses and other obligations paid or incurred . . . ." (Emphasis added.) General Statutes § 22a-449c (a) (2).

state need not pay a deserving claim simply by asserting that there are other pending claims with a priority over the plaintiff's claims regardless of whether any of those other claims are being pursued or are under active consideration by the state. Surely that is not the intent of this legislation, which, this court previously has stated, was to ameliorate the harm caused by deteriorating underground storage tanks leaking fuel into the ground.[2] Given those facts, I believe, respectfully, that the plaintiff's assertion that once it has established its entitlement for payment of its claims, the burden should shift to the state to show not only that other claims have been filed, but that there are other claims being pursued and under active consideration by the state that, if granted, would extinguish the program's remaining funds.

The majority's second basis for rejecting the plaintiff's claims relates to mandamus as a rare process only carefully employed. I have no disagreement with the majority's recital of decisional law demonstrating its point, but I do not agree with its conclusion. If this matter were to be remanded to the trial court with direction to the court to employ the burden shifting scheme on the statute at hand, the evidence may well make it plain that the plaintiff's claims, already approved, are the only viable claims before the commissioner.

---

[2] In *Aldin Associates Ltd. Partnership* v. *State*, 209 Conn. App. 741, 269 A.3d 790 (2022), this court stated: "In 1989, the General Assembly enacted legislation titled 'An Act Concerning Underground Storage Tanks' (act), which established the underground storage tank petroleum clean-up fund (fund). See Public Acts 1989, No. 89-373 (P.A. 89-373), codified as amended at General Statutes (Rev. to 1991) § 22a-449a et seq. Initially, the act provided that the fund shall be credited one third of the tax imposed on gross earnings derived from the sale of petroleum products under General Statutes § 12-587 and that the fund is to be used by the commissioner to reimburse responsible parties for costs incurred in remediating leaking underground storage tanks. . . . The act was amended several times during the years following its enactment in 1989." (Citations omitted; footnote omitted.) *Aldin Associates Ltd. Partnership* v. *State*, supra, 744.

Additionally, since the program has been terminated, no further claims may be made. In that circumstance, an order from the court to the state to disburse the remaining funds would require no more than a ministerial act by the commissioner and is consistent with the statute's direction that payment be made on approved claims with priority over all others.

In the case at hand, the public policy of the act establishing the fund is based on environmental concerns and to encourage businesses to improve the safety of fuel storage tanks that risk polluting the soil. The plaintiff's claims would serve that purpose. Accordingly, I respectfully concur in part and dissent in part.